# ARLENE E. STANDAFER v. FIRST NATIONAL BANK OF MINNEAPOLIS AND ANOTHER.[1]

February 29, 1952.

No. 35,577.

*Snyder, Gale, Hoke, Richards & Janes,* for appellants.
*Mordaunt & Mordaunt* and *Peter F. Walstad,* for respondent.

MATSON, JUSTICE.

Defendants appeal from an order denying their motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff's action is for damages for the wrongful death of her husband, Earl K. Standafer. Decedent, as an independent contractor in the moving and hauling business, on May 12, 1948, was hired by one of defendants' tenants to move a bookcase from the sixth floor of the New York Life building in Minneapolis to another

[1]Reported in 52 N. W. (2d) 718.

building. Decedent, accompanied by his own helper, entered defendants' New York Life building and obtained the use of the freight elevator, which was then being operated by defendants' servant, Jacob Verlo. It was found that the bookcase was too large to be placed inside the elevator. Verlo, the elevator operator, then stated that the bookcase should be placed on top of the elevator, but that to do so more help was needed. Since help could not be obtained for another 15 minutes, decedent and his helper stated that they could handle it alone. The elevator operator then lowered the elevator so that the top of the elevator was even with the floor level of the sixth floor. Decedent and his helper then stepped on top of the elevator to examine it and determine how the bookcase should be placed. The light inside the shaft was poor, but it appears that the men could see what they were doing.

The top of the elevator was of steel construction. It was flat and composed of three sections running horizontally with the front of the elevator. Each section had a reinforcing angle iron around its edge about one inch in height. The same type of angle iron, with one side projecting upward, also extended around the entire outer edge of the top. Fastened to and running across the middle of the top were two heavy iron beams which carried the elevator and extended above the surface. There were no safety guards or rails around the outer edge, and there were dirt spots and bits of paper on top. There were also cables running up and down the shaft, and the adjoining shaft was empty.

After decedent and his helper completed their inspection, they stepped out from the top of the elevator. Decedent picked up one end of the bookcase and commenced backing onto the top of the elevator while his helper, who was then facing him, carried the other end. While in this position, the two men could not see each other because the bookcase was between them. Decedent crossed over the center beams and set his end of the bookcase down. The helper, after waiting for a further movement on the part of decedent, called to him but received no answer. The helper then pulled the bookcase out of the elevator shaft only to discover that

decedent had disappeared. Decedent was found at the bottom of the adjoining elevator shaft. Five days later he died from his injuries.

A $10,000 verdict was awarded plaintiff. Defendants have appealed from an order denying their motion for judgment notwithstanding the verdict or a new trial.

Although issues have been raised as to negligence, contributory negligence, and assumption of risk, and as to whether decedent was a business guest or a mere licensee, these need not be considered, in that a new trial will be necessary by reason of prejudicial error which occurred when the trial court charged the jury that the violation of a certain city ordinance was prima facie evidence of negligence.

■ One of decedent's shoes with its heel torn loose was admitted into evidence on the theory that it provided a basis for an inference that decedent's heel had caught on the inch-high angle iron around the edge of the elevator, and that as a proximate result thereof he was caused to trip and plunge to his death. Another theory which is at least equally persuasive is that the heel was torn loose by striking some structural object in the course of the fall of decedent's body to the bottom of the shaft. Circumstantial evidence which justifies not only an inference in support of the verdict but with equal consistency justifies a nonsupporting inference of equal persuasive weight is inadmissible, in that a jury may not base its conclusions upon mere conjecture. Circumstantial evidence is, of course, admissible even though it may justify more than one inference or theory as to the proximate cause of an accident, if the inference or theory in support of the verdict reasonably outweighs and preponderates over other conflicting inferences or theories. Sherman v. Minnesota Mut. L. Ins. Co. 191 Minn. 607, 255 N. W. 113. Clearly, it was error to admit the shoe into evidence. Likewise, speculation as to just when decedent came into contact with the greasy cables with his coveralls and with his hand also does nothing to explain how the accident happened. Although it was error to admit as exhibits the shoe and the coveralls, it is

difficult, in the light of the entire evidence, to perceive that any prejudice could have resulted.

■ Only one section of the Minneapolis elevator ordinance was considered in the trial below, namely, § 30.8, which provides:

"No material not a part of the elevator equipment shall be permitted upon the top or cover of any elevator car."

Plaintiff asserts that a violation of this section establishes negligence. Defendants contend, however, that if the section has any application then decedent personally participated in its violation and is guilty of contributory negligence. The trial court charged the jury that the violation of such ordinance was prima facie evidence of negligence.[2] It is elementary that not every violation of a legislative enactment constitutes negligence. Whether negligence arises from the violation of a legislative enactment can be ascertained only after a careful consideration of both the enactment and the facts of the particular case to determine: (1) If the intent of the enactment is to protect a class of which plaintiff is a member; (2) if plaintiff has been injured with respect to the particular interest which the enactment was designed to protect from invasion; (3) if plaintiff's injury was caused by the particular hazard or form of harm against which the enactment was designed to give protection; (4) if the violation is a proximate cause of plaintiff's injury[3]; (5) if plaintiff has so conducted himself that—in the absence of a statutory intent to deprive defendant of the defensive shield of contributory negligence by reason of plaintiff's immaturity or other inability to protect himself—he is barred by his own negligence.[4] As applied to the instant case, what was the protec-

[2]In the absence of statutory provision to the contrary, the violation of an applicable statute or ordinance is negligence per se. Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543.

[3]See, Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. (2d) 221; Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640.

[4]As to entire rule generally, see Restatement, Torts, § 286, and *comments a to j.*

tive scope and purpose of the ordinance? Was § 30.8 enacted in whole or in part to protect persons engaged in loading articles on top of an elevator from the hazard of falling off the top? It is difficult to understand how § 30.8 can be so construed. A careful consideration of the language of the ordinance indicates that it was enacted to prevent objects from falling off the top of the elevator and injuring persons below or persons in an adjoining elevator, and also to protect persons in the elevator from being injured by such objects coming through the roof when the elevator reaches the top of the shaft. Words and phrases of a statute— and this is equally applicable to an ordinance—are to be construed according to their common and approved usage, unless by so doing a construction results which is inconsistent with a manifest legislative intent or repugnant to the context of the statute. M. S. A. 645.08(1). The wording of the ordinance is plain. It provides simply that no materials shall be permitted on top of the elevator. It says nothing about persons. The obvious intent is to prevent materials from falling off the top or from coming through the top when the elevator approaches the roof of the shaft. In other words, the purpose of the ordinance—and this applies to the corresponding provision of the regulations of the industrial commission—is to protect from the hazard of falling objects persons in one of two classifications, namely, persons below and persons riding inside the elevator or in or on an adjoining elevator. It follows that decedent while loading the bookcase on top of the elevator was not a member of one of the classes which the ordinance was designed to protect, and he was not injured by the particular hazard or hazards against which the ordinance was designed to give protection. We are, therefore, not concerned with any issue of negligence or contributory negligence stemming from a violation of the ordinance. A person who is not a member of a class protected by an ordinance, or who has been injured by a hazard against which

the ordinance gives no protection, may not invoke its aid in establishing the negligence of a violator of its provisions.[5]

It was prejudicial error to permit the jury to predicate negligence on the violation of an ordinance which had no application. The order of the trial court is reversed, and a new trial is granted.

Reversed.

---

[5]See, Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543; Alsaker v. DeGraff Lbr. Co. 234 Minn. 280, 48 N. W. (2d) 431; Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450, and cases cited therein; Hahn v. Diamond Iron Works, Inc. 221 Minn. 33, 20 N. W. (2d) 704; Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31; 38 Am. Jur., Negligence, §§ 163, 165; Restatement, Torts, § 286; 19 Minn. L. Rev. 667, 673.