371 A.2d 1021

**Ruth SCHIMMELBUSCH, Appellee,**

v.

**ROYAL–GLOBE INSURANCE CO., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1976.

Decided March 31, 1977.

Arthur Silverblatt, Wilkes-Barre, for appellant.

John G. Swatkoski, Wilkes-Barre, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

The appellee was an uninsured driver of an uninsured car who suffered serious injuries in an automobile collision with a car owned by County Hauling, Inc. and insured by appellant insurance company. The accident occurred on August 7, 1975, and was within the grace period allowed for procurement of no-fault insurance under the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. 1009.101 et seq.

Appellee has instituted an action in assumpsit against appellant insurance company charging that it is responsible for the payment of the benefits to an injured party which are provided by the No-Fault Act. Appellant filed preliminary objections in the nature of a demurrer on the grounds that the complaint failed to state a cause of action against appellant because appellee's recourse for payment was to the Assigned Claims Plan established under Section 108 of that Act instead of against appellant. Claims under the Assigned Claims Plan are allocated equitably among all insurance companies licensed in Pennsylvania to write auto insurance. The benefits payable to appellee will be the same in either event inasmuch as appellee's uninsured status was within the grace period for obtaining insurance and, therefore, not subject to any deductions as would have been the case had appellee's uninsured status been a violation of the Act.

The court below dismissed appellant's preliminary objections but amended its original order to include a certificate to the effect that in the opinion of the court its order involved a controlling question of law as to which there was substantial ground for a difference of opinion and that an immediate appeal from the order might materially advance the ultimate determination of the matter. An immediate appeal to this court followed.

This action is one of first impression. It presents for determination an interpretation of Section 204(a)(4) of the No-Fault Act which, in context, reads:

"(a) *Applicable security.*—The security for the payment of basic loss benefits applicable to an injury to:

"(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

"(2) an insured is the security under which the victim or deceased victim is insured;

"(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

"(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and

"(5) any other individual is the applicable assigned claims plan.

"(b) *Multiple sources of equal property.*—If two or more obligations to pay basic loss benefits apply equally to an injury under the priorities set forth in subsection (a) of this section, the obligor against whom a claim is asserted first shall process and pay the claim as if wholly responsible. Such obligor is thereafter entitled to recover contribution pro rata from any such obligor for the basic loss benefits paid and for the costs of processing the claim. If contribution is sought among obligors responsible under paragraph (4) of subsection (a) of this section proration shall be based on the number of involved motor vehicles."

The meaning of subparagraphs (1), (2) and (3) of subsection (a) is quite clear. They establish categories and priorities as between insurers responsible for payment of benefits. Subparagraph (1) puts such responsibility on the insurer of a motor vehicle of an employer when the victim is an employ-

ee or a member of his family who is using the car at the time of the accident. If a claimant carries insurance, subparagraph (2) directs that the claim must be presented to that insurer. If the claimant is uninsured but in an insured vehicle at the time of the accident, subparagraph (3) directs that the claim be submitted to that insurer.

The application of subparagraph (4) is in dispute. It directs "an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident" to present his claim to the insurer of any motor vehicle involved in the accident. This would include any uninsured person who is not an occupant of a vehicle such as a pedestrian or a bystander who was injured by a motor vehicle. This is the interpretation given to the subparagraph by appellant and it finds support in a brochure on the No-Fault Act prepared and distributed by the Pennsylvania Bar Institute.

However, the lower court took the position that subparagraph (4) applies to "an individual who is not an insured or the driver or other occupant of [an *insured*] motor vehicle involved in an accident". The court interpolated the word "insured" in order to clarify what it understood the intent of the legislation to be. It is supported in this interpretation of the No-Fault Act by a brochure prepared and distributed by the Pennsylvania Trial Lawyers Association. Thus edited, subparagraph (4) would entitle the appellee as an uninsured driver or occupant of an uninsured car to bring her claim under this subparagraph and thereby present it to the insurer of the other vehicle involved in the accident; namely, the one insured by appellant.

The Statutory Construction Act of 1970, Section 1923(c), 1 Pa.C.S.A. 1923, authorizes the judicial addition of an appropriate word or phrase to a statute when helpful to its interpretation if the addition does not conflict with the obvious purpose of the statute or affect its scope and operation in any way. However, the judicial limitation of the statutory wording to an *insured* vehicle substantially enlarg-

es the scope of the subparagraph in apparent contradiction to the legislative intent as shown elsewhere in the Act.

As revised by the court below, subparagraph (4) includes both an uninsured driver of an uninsured car and a pedestrian although each of the earlier subparagraphs is confined to a single class of claimants. The judicial interposition of "insured", while necessary to enlarge the subparagraph to include an uninsured driver of an uninsured car, is totally inappropriate to the definition of a pedestrian. Likewise the second sentence of subparagraph (4) in excluding a parked and unoccupied motor vehicle from the definition of a car involved in an accident is further defining the bystander role rather than one in the position of the appellee.

But the greatest difficulty in adopting the lower court's interpretation of subparagraph (4) as applying to an uninsured driver of an uninsured car is that it overlooks the role assigned by the statute to the Assigned Claims Plan detailed in Section 108 of the No-Fault Act. Under this Plan, all claimants for whom insurance is not carried must present their claim to the Assigned Claims Bureau. The Bureau then allocates these uninsured claims among all of the insurance companies which write auto insurance in Pennsylvania. This Assigned Claims Plan becomes the fifth category under Section 204.

If the construction of the trial court prevails, an uninsured driver of an uninsured car can present his claim to the insurer of any other insured car involved in the accident instead of to the Assigned Claims Bureau for equitable assignment under subparagraph (5). The trial court conceded that were it not for the fact that the uninsured appellee was within the preliminary grace period afforded by the Act for obtaining insurance, her uninsured status would put her in category (5); namely, Assigned Claims. We find nothing in the Act which gives an uninsured claimant in an uninsured vehicle any different classification during the grace period than she would occupy afterwards.

The logic of the situation suggests that a claimant carrying no insurance on her car or herself should have a claim only through the Assigned Claims Bureau. In this way the cost of payments made to uninsured claimants is spread equitably among all the carriers in the Plan. The interpretation urged by the appellee and accepted by the court below would impose that burden upon a specific carrier already responsible for damages suffered by the party on which it carries insurance.

We conclude that subparagraph (4) should be interpreted as written, and to apply to an uninsured claimant who was not an occupant of a car; namely, a pedestrian or bystander. This excludes appellee and remits her to a claim under subparagraph (5) to the Assigned Claims Bureau. Appellee will obtain the same recovery through the Assigned Claims Bureau under subparagraph (5) that she would under subparagraph (4). But the result is much more equitable to the appellant and all insurance carriers because it spreads such uninsured losses equally among them.

If we have misconstrued the intention of the legislature, it has an obvious recourse in the clarification of its intention.

The order of the court below is reversed.