## Participation in the Assigned Claims Plan

KANE, Attorney General, LICHTMAN, Deputy Attorney General, and YAKOWICZ, Solicitor General, October 6, 1977 — In March of 1977, Acting Secretary of Transportation George Pulakos, re-

quested an opinion concerning whether obligated governments and self-insurers are required to participate in the Pennsylvania Assigned Claims Plan (plan) and the Pennsylvania Assigned Claims Bureau (bureau), established by section 108 of the No-Fault Act of July 19, 1974, P.L. 489 (act), 40 P.S. §1009.108. We have determined that obligated governments and self-insurers are not required to participate in the plan and the bureau.

Section 108(b)(1) provides:

"Obligors other than self insurers and governments providing basic loss insurance in this Commonwealth shall organize and maintain, subject to approval and regulation by the commissioner, an assigned claims bureau and an assigned claims plan and adopt rules for their operation and for assessment of costs on a fair and equitable basis consistent with this act. If such bureau and plan are not organized and maintained in a manner considered by the commissioner to be consistent with this act, he shall organize and maintain an assigned claims bureau and an assigned claims plan. Each obligor insurer providing basic loss insurance in the Commonwealth shall participate in the assigned claims bureau and the assigned claims plan. Costs incurred shall be allocated fairly and equitably among the obligors."

The Insurance Department has taken the position that self-insurers and obligated governments are required to participate in the bureau and the plan. It bases this contention on the last sentence of section 108(b)(1) of the act which states: "Costs incurred shall be allocated fairly and equitably among the obligors." Since it is inconsistent with the Rules of Statutory Construction to read that

sentence in a vacuum, we cannot agree with the Insurance Department's position.

In order to properly interpret section 108(b)(1), it is helpful to review the section sentence by sentence. In the first sentence, it is clear that self-insurers and obligated governments are excluded from organizing and maintaining the bureau and the plan. The third sentence of section 108(b)(1) is addressed to "each obligor insurer" and therein lies the confusion.

The terms "obligor" and "insurer" are defined in section 103 of the act, 40 P.S. §1009.103. The term "insurer" is defined as:

" . . . a legally constituted entity, *other than a self-insurer or an obligated government*, which is authorized under state law to provide security covering a motor vehicle in such state." (Emphasis supplied.)

"Obligor," on the other hand, is defined as:

" . . . an insurer, self-insurer, or obligated government providing no-fault benefits in accordance with this act."

The discrepancy is readily apparent. The term "obligor" includes self-insurers and obligated governments; the term "insurer" specifically excludes those entities. Since the two words are used together, it behooves us to interpret them such that each term has meaning. See Commonwealth v. White Star Lines, Inc., 74 Dauph. 119 (1960), in which it was held that the construction of a statute will be favored which renders every word operative rather than one which makes some words idle and negative. The terms "obligor" and "insurer" are capable of construction which affords meaning to both. "Obligor" includes three entities; insurers, self-insurers and obligated governments. "In-

surer" obviously is one of those entities. This being so, the only interpretation of the term "each obligor insurer" which satisfies the relevant rules of statutory construction excludes self-insurers and obligated governments from the provisions of section 108(b)(1). "Obligor insurer" is another way of saying "obligors who are insurers," that is "obligors other than self-insurers and obligated governments." Such an interpretation is consistent with the first sentence of the section, wherein the language "obligors other than self-insurers and . . . governments" is used. The word "insurer" could have been used to say the same thing, but it was not. The legislature chose, instead, to use other means of expressing the term "insurer" in the first sentence and acted similarly in the third sentence.

As noted, the Insurance Department has included self-insurers and governments in the bureau and the plan on the basis of the last sentence which refers to "the obligors." However, the use of the article "the" denotes reference back to the "obligors other than self-insurers and obligated governments" and "obligor insurers" referred to in the previous sentences of section 108(b)(1). To construe the fourth sentence of section 108(b)(1) to apply to all obligors would result in an interpretation which would render the article "the" as mere surplusage. Such an interpretation abrogates sections 1921(a) and 1922(2) of the Statutory Construction Act of November 25, 1970, P.L. 707, as amended, 1 Pa. C.S.A. §§1921, 1922. Section 1921(a) of the Statutory construction Act provides, inter alia, that: "Every statute shall be construed, if possible, to give effect to all its provisions." Section 1922(2) of the Statutory Construction Act provides "that the General Assembly intends the en-

tire statute to be effective and certain." Further, the emphasis given the fourth sentence of section 108(b)(1) of the act by the Insurance Department contravenes the rules of statutory construction as articulated in Lynch v. O. J. Roberts School District, 430 Pa. 461, 469, 244 A.2d 1 (1968), where it was stated:

"It is a well established doctrine of statutory construction that a statute must be read to give effect to *all* of its language. . . And the Legislature is presumed not to have intended its laws to contain surplusage."

Therefore, the only reasonable interpretation of the fourth sentence of section 108(b)(1) is that the article "the" modifies the word "obligor" and refers to "obligor insurer" and "insurers other than self-insurers and obligated governments" previously referred to in that section who are required to participate in the bureau and the plan.

The provisions of section 1932(a) of the Statutory Construction Act, 1 Pa. C.S.A. §1932(a), also mitigate against the Insurance Department's interpretation of the last sentence in section 108(b)(1). Section 1932(a) provides:

"Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things."

It is abundantly clear that the first three sentences of section 108(b)(1) are related to the last sentence of that section and that, for this reason, all of the sentences of that section must be read together. In construing the section as a whole, it is obvious that the words "the obligors" in the fourth sentence refer to the obligor insurers of the third sentence and the obligors, other than self-insurers and governments referred to in the first sentence.

To construe the section otherwise is to ignore the import of the section as a whole.

There is dicta in the case of Schimmelbusch v. Royal-Globe Insurance Co., ____ Pa. Superior Ct. ____, 371 A.2d 1021 (1977), decided by the Superior Court, which substantiates our position on the subject. In referring to the composition of the Assigned Claims Plan, the Superior Court stated:

"Claims under the Assigned Claims Plan are allocated equitably among all *insurance companies* licensed in Pennsylvania to write auto insurance." (Emphasis supplied.) Id. at 1022; and,

"The logic of the situation suggests that a claimant carrying no insurance on her car or herself should have a claim only through the Assigned Claims Bureau. In this way the cost of payments made to uninsured claimants is spread equitably among all the *carriers* in the Plan." (Emphasis supplied.) Id. at 1024.

In that case, the Superior Court assumed that the costs incurred by the bureau and the plan, as delineated in section 108(b)(1) of the act, are to be allocated fairly and equitably only among obligor insurance companies licensed in Pennsylvania to write insurance.

On the basis of the foregoing, you are hereby advised that obligated governments and self-insurers are not required to participate in the plan or the bureau. Therefore, any money which has been collected from self-insurers by the plan and the bureau should be refunded as soon as possible.

Due to the fact that this opinion impacts on the Insurance Department's self-insurance regulations (31 Pa. Code Chapter 66) which provides at section 66.6-2 that self-insurers must certify that

they have entered into an agreement with the plan to pay their fair share of the claims, costs and expenses of the plan, we are sending a copy of this opinion to the Insurance Commissioner and directing him accordingly.