Jaime BALDERRAMA, Appellant,

v.

**MILBANK MUTUAL INSURANCE CO., Respondent.**

No. 82–148.

Supreme Court of Minnesota.

Sept. 24, 1982.

James D. DiLorenzo, St. Paul, for appellant.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and Laura S. Underkuffler, Minneapolis, for respondent.

PETERSON, Justice.

Plaintiff Jaime Balderrama claims a right to basic economic loss benefits under the priorities provision of the Minnesota No-Fault Automobile Insurance Act (the Act), Minn.Stat. § 65B.47 (1980). The district court denied the claim, granting the motion of defendant Milbank Mutual Insurance Company (Milbank) for summary judgment. Balderrama appeals from this order. Two issues arise: (1) whether Balderrama's prior settlement of disability claims precludes a claim for statutory basic economic loss benefits; and (2) whether Balderrama was the "driver or other occupant" of his vehicle within the meaning of section 65B.47, subd. 4(c). We affirm the district court's order for summary judgment.

The facts in this case are stipulated. On June 8, 1979, Balderrama was traveling on Interstate Highway No. 94 when his vehicle ran out of gasoline on the bridge crossing the Mississippi River. Balderrama parked his vehicle in the right-hand lane and walked to the next exit to get gasoline. He returned to his vehicle with a can of gasoline, and, while standing outside and at the rear of his vehicle filling the tank, he was struck from behind by a vehicle operated by Robert Overturf, an insured of Milbank. Balderrama was injured, which prevented him from carrying out his regular employment. At the time of this accident neither Balderrama nor his vehicle was insured under a policy of insurance as required by the Act.

In March 1980 Balderrama commenced an action against Overturf to recover damages for injuries arising out of the accident. Overturf tendered defense to his insurer, Milbank, and Milbank settled Balderrama's claim against Overturf for $50,000.

In April 1981 Balderrama commenced the present action against Milbank to recover basic economic loss benefits under section 65B.47, subd. 4(c), of the Act, which provides that an insured person who is not the "driver or other occupant" of an involved vehicle may look to the security covering any involved vehicle. The district court determined that Balderrama was the "driver or other occupant" of his own uninsured vehicle at the time of the accident and that his claim for basic economic loss was barred by his prior settlement and release of his liability claim against Overturf, Milbank's insured.

■ 1. We initially hold that Balderrama's prior settlement of his common law liability claims against Overturf does not bar his present claim for basic economic loss benefits from Milbank. Balderrama's settlement with Milbank's insured provides for the release and discharge of Overturf, "his heirs, successors, administrators and assigns from any and all actions, causes of action, liability claims * * *." This constitutes a release of Overturf's common law tort liability to Balderrama. The settlement says nothing about a release of Milbank's separate statutory obligation to pay basic economic loss benefits.

The Act specifically provides that "every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic economic loss benefits," Minn.Stat. § 65B.46, subd. 1 (1980). The settlement agreement does not abrogate this right by implication. Furthermore, as we stated in *Gronquist v. Olson*, 242 Minn. 119, 64 N.W.2d 159 (1954), "a release has been defined as a relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists, *to the person against whom it might have been enforced.*" *Id.* at 125, 64 N.W.2d at 163–64 (emphasis added). Since Balderrama could not have enforced any statutory right to basic economic loss benefits against Overturf, his settlement with Overturf is unrelated to and does not affect that statutory right.

■ 2. Holding Balderrama not barred by his prior settlement agreement, our attention now focuses on his statutory right to basic economic loss benefits under the priorities provision of the Act. We hold he has no right to those benefits.

Necessary for this determination is an analysis of the words "driver or other occupant" used within the priorities provision of the Act.[1] The first three provisions deal with commercial vehicles. In all other cases the following priorities apply:

(a) The security for payment of basic economic loss benefits applicable to injury to an insured is the security under which the injured person is an insured.

---

1. This is a question of first impression. Despite the positions of the parties in this case, our prior "maintenance or use" cases do not construe the priorities provision. Those cases, *e.g., Krupenny v. West Bend Mutual Ins. Co.*, 310 N.W.2d 133 (Minn.1981); *Haagenson v. Nat'l Farmer's Union Property & Casualty Ins.*

*Co.*, 277 N.W.2d 648 (Minn.1979), involve a determination of whether a particular accident is sufficiently "automobile-related" to trigger coverage by the Act. The stipulated facts of this case, however, are that Balderrama was injured when he was struck from behind by a vehicle operated by Robert Overturf.

(b) The security for payment of basic economic loss benefits applicable to injury to the *driver or other occupant* of an involved motor vehicle who is not an insured is the security covering that vehicle.

(c) The security for payment of basic economic loss benefits applicable to injury to a person not otherwise covered *who is not the driver or other occupant* of an involved motor vehicle is the security covering any involved motor vehicle. An unoccupied parked vehicle is not an involved motor vehicle unless it was parked so as to cause unreasonable risk of injury.

Minn.Stat. § 65B.47, subd. 4 (1980) (emphasis added).

Priority (a) of subdivision 4 is inapplicable in this case—Balderrama was uninsured at the time of the accident. His vehicle was also uninsured. At the time of the accident, his status as a "driver or other occupant" becomes dispositive: if Balderrama is considered to have been the "driver or other occupant" of his vehicle while filling the tank, he must look to the security covering his own (uninsured) vehicle—so no recovery is available under priority (b) of subdivision 4; if Balderrama is not considered to have been the "driver or other occupant" of his vehicle (*e.g.*, a pedestrian), he may look to the security covering any involved motor vehicle—recovery is forthcoming from Milbank, the insurer of Overturf's vehicle. *Id.* subd. 4(c).

No statutory definition is given for the terms "driver or other occupant" in the Act. *See* Minn.Stat. § 65B.43 (1980). Instead, we are left with the task of construing these words in accordance with their common understanding and in congruence with

legislative intent. Minn.Stat. §§ 645.08, 645.16 (1980). The common understanding of the term "driver" connotes a position of responsibility, not necessarily just a position of geography.[2] Appellant suggests that the words following driver, "or other occupant," limit driver to a geographic term. We reject this construction as inconsistent with the legislative intent regarding uninsured drivers of uninsured vehicles.[3] *Id.*

The search for legislative intent begins. Aiding this search are two presumptions set forth by Minn.Stat. § 645.17 (1980):

> In ascertaining the intention of the legislature the courts may be guided by the following presumptions:
>
>   *    *    *    *    *    *
>
> (2) The legislature intends the entire statute to be effective and certain;
>
>   *    *    *    *    *    *
>
> (5) The legislature intends to favor the public interest as against any private interest.

The underlying principle of the priorities provision is enunciated in the comments to the parallel provision of the Uniform Motor Vehicle Accident Reparations Act (UMVARA), the precursor to Minnesota's Act. The comment indicates: "[A] person suffering loss should make his claim for basic reparaton [sic] benefits against his *own* reparation obligor." 14 U.L.A. 62 (1980) (emphasis added). A driver of an automobile first looks to any security covering himself. (Balderrama has none.) Minn.Stat. § 65B.47, subd. 4(a). The uninsured driver then looks to the security covering his own involved vehicle. (Balderrama again has no insurance on his vehicle.) Minn.Stat. § 65B.47, subd. 4(b). An uninsured driver

---

**2.** This point is illustrated by the following hypothetical: if a police officer had approached plaintiff on the highway when he was outside of the automobile and had asked, "Are you the driver of this vehicle?"—certainly an answer of, "No, I am not behind the steering wheel" would not be acceptable.

**3.** The somewhat unusual posture of this case should be noted: usually insurance companies seek geographic limitations on the words used in no-fault statutes. The effect of such limita-

tions is to restrict their insurance responsibilities. We denied geographic restrictions when the compensatory objectives of the Act were overriding. *See, e.g., Iverson v. State Farm Mutual Auto Ins.*, 295 N.W.2d 573, 575–576 (Minn.1980). In the instant case, however, a claimant seeks a geographically restrictive interpretation of the words used in the Act. Our decision reflects equally strong legislative intent regarding uninsured motorists, on these particular facts, driving uninsured vehicles.

driving an uninsured vehicle can drop no further through the priorities provision. Subdivision 4(c) expressly excludes such individuals. *Id.* Their recourse is the assigned claims plan, Minn.Stat. § 65B.64 (1980). Subdivision 3 of this provision reads:

> A person shall not be entitled to basic economic loss benefits through the assigned claims plan with respect to injury which was sustained if at the time of such injury the injured person was the owner of a private passenger motor vehicle for which security is required under sections 65B.41 to 65B.71 and he failed to have such security in effect. Members of the owner's household other than minor children shall also be disqualified from benefits through the assigned claims plan.

Significantly, Balderrama is barred from participating in the assigned claims plan—because of his failure to insure his automobile. The legislature is not charitable to uninsured persons driving uninsured vehicles. For the no-fault system to work, persons must contribute premiums to the insurance pool; otherwise, responsible persons carrying insurance become the insurers of those unwilling to pay the true costs involved in establishing a viable no-fault insurance system.

To attain recovery, appellant needs to circumvent the stringent statutory track tailored for uninsured motorists driving uninsured vehicles. He latches onto his position outside the automobile at the time of the accident—disclaiming his status as driver of the automobile he was filling with gasoline. Subdivision 4(c) of the priorities provision covers a person not otherwise covered who is *not* a driver or other occupant of an involved motor vehicle. Minn.Stat. § 65B.47, subd. 4(c) (1980) (emphasis supplied). We hold that plaintiff retained his status as driver of his vehicle under the facts of this case. The last sentence of subdivision 4(c) suggests itself the notion of responsibility inherent in the provision. Those who park their vehicles in a manner which may cause an unreasonable risk of injury subject their vehicles to added liability for no-fault claims. *Id.* This reflects a notion of responsibility. Moreover, subdivision 4(c) is designed directly for pedestrians and bystanders,[4] who may not be expected to carry insurance. 14 U.L.A. 62 (comment). As the previous priority categories and the assigned claims plan demonstrate, a driver is expected to carry insurance.

We do not believe that subdivision 4(c) is intended to be a catch-all provision, opening a last resort and deep pocket for those avoiding their own responsibilities in operating motor vehicles.[5] With deference to what we perceive to be the legislative design in drafting the priorities provision, we hold that appellant retained his "driver" status at the time of his accident—and is not entitled to basic economic loss benefits under Minn.Stat. § 65B.47, subd. 4(c) (1980).

Affirmed.

COYNE, J., took no part in the consideration or decision of this case.

YETKA, Justice, dissenting.

I cannot agree with the majority opinion that Balderrama is a "driver or other occu-

---

4. This is not a case where plaintiff has attained bystander or pedestrian status. His automobile was only temporarily stopped in a hazardous area, Interstate Highway No. 94. *Cf. Hayes v. Erie Ins. Exchange*, 261 Pa.Super. 171, 395 A.2d 1370 (1978) (a plaintiff who parked automobile on a street, walked to corner, and was struck crossing the intersection was entitled to basic economic loss benefits—as an uninsured pedestrian. Her automobile was not insured).

5. The Pennsylvania Superior Court agrees in this assessment. In *Schimmelbusch v. Royal-Globe Ins. Co.*, 247 Pa.Super. 28, 371 A.2d 1021 (1977), an uninsured motorist driving an uninsured vehicle sought recovery under a quite similar priority provision. The court denied relief, refusing to distort the language of the statute, and sending the claimant to the assigned claims plan.

pant" of his motor vehicle within the meaning of the priorities provision of the no-fault act. As the majority points out, the precise definition of "driver or other occupant," as used in Minn.Stat. § 65B.47, subd. 4(c) (1980), is one of first impression. We must look to common understanding and legislative intent to derive its meaning here. Minn.Stat. §§ 645.08(1), 645.16 (1980); *Standafer v. First National Bank*, 236 Minn. 123, 127, 52 N.W.2d 718, 721 (1952).

It is unlikely that anyone would consider a person like Balderrama, who was *outside* his vehicle filling his tank, to be a "driver or other occupant" as that expression is commonly understood. The legislature's use of the words "or other occupant" strongly suggests individuals *inside* the vehicle. Legislative intent should not be determined by reference to the broad policy underpinnings of the no-fault system when the words of the statute itself provide a clear indication of legislative intent. *See* Minn.Stat. § 645.-16 (1980).

The commissioner's comment to the priorities provisions of the Uniform Motor Vehicle Accident Reparations Act also suggests that "driver or other occupant" contemplates vehicle occupancy, not merely external vehicle contact. It states: "Pedestrians *and other persons not occupying a motor vehicle*, but who are not basic reparations insureds, may claim against the security covering any 'involved' vehicle." Unif. Motor Vehicle Accident Reparations Act § 4, comment, 14 U.L.A. 62 (1972) (emphasis added).

I would hold that Balderrama was not a "driver or other occupant" of an involved vehicle and that he could therefore look "to the security covering any involved motor vehicle" under subdivision 4(c) of the priorities provision of the no-fault act. I would reverse.

TODD, Justice, dissenting.

I join in the dissent of Justice Yetka.

WAHL, Justice, dissenting.

I join in the dissent of Justice Yetka.