**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, as a servicing agent of Minnesota Automobile Assigned Claims Bureau, Appellant,**

**Shirley May Sayers, individually and as parent and natural guardian of Rosetta Agnes Roberts and grandparent and natural guardian of Donte Don Spears, Respondent,**

**and**

**American Family Mutual Insurance Company, as a servicing agent of Minnesota Automobile Assigned Claims Bureau, Appellant,**

**v.**

**Muriel Jean THUNDER, as parent and natural guardian of Karla Jean Thunder, Kristina Marie Thunder and Kayla May Thunder, Respondent.**

Nos. C2–99–1390, C2–99–1391.

Court of Appeals of Minnesota.

Feb. 15, 2000.

Timothy J. Eiden, Carrie L. Hund, Hanson, Dordell, Bradt, Odlaug & Bradt, P.L.L.P., St. Paul, for appellants.

Gary M. Hazelton, Hazelton & Rogers, P.C., Bemidji, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge, RANDALL, Judge, and PETERSON, Judge.

## OPINION

PETERSON, Judge.

These consolidated appeals are from summary judgments declaring that appellant insurers are obligated to pay basic economic loss benefits arising out of motor vehicle accidents that occurred on the Red Lake Reservation and involved uninsured motor vehicles that were licensed and registered under the laws of the reservation. We affirm.

## FACTS

### A. State Farm Mutual Automobile Ins. Co. v. Sayers

Respondent Shirley May Sayers, Rosetta Roberts, and Donte Don Spears were involved in a motor vehicle accident on a highway within the Red Lake Reservation. All three were enrolled members of the Red Lake Tribe, and they were residents of the Red Lake Reservation. Allen Roberts, Jr., a resident of the Red Lake Reservation, owned the 1986 Toyota that they were riding in when the accident occurred. The Toyota was licensed and registered under the laws of the Red Lake Reservation, but it was not insured. On the date of the accident, Sayers, Rosetta Roberts, and Spears did not reside with Allen Roberts, Jr., and Rosetta Roberts and Spears were minors.

Alleging that the three had sustained personal injuries in the accident, Sayers applied to the Minnesota Automobile Assigned Claims Bureau for no-fault benefits pursuant to Minn.Stat. § 65B.44 (1998). The claim was assigned to appellant State Farm Mutual Automobile Insurance Company. State Farm denied the claim, arguing that there was no coverage under the assigned claims plan because the accident occurred on the Red Lake Reservation and involved reservation residents who were occupying an uninsured vehicle that was licensed and registered under the laws of the reservation.

State Farm brought a declaratory judgment action seeking a determination that Sayers, Rosetta Roberts, and Spears were not entitled to coverage under the assigned claims plan. The parties submitted stipulated facts, and both parties moved for summary judgment. The district court declared that the three were entitled to benefits and granted Sayers's motion for summary judgment.

### B. American Family Mutual Insurance Company v. Thunder

James Thunder, Jr., was killed in a single-car accident that occurred on a highway within the Red Lake Reservation. James Thunder, Jr., owned the 1985 Chevrolet that he was driving at the time of the

accident. The Chevrolet was registered and licensed under the laws of the Red Lake Reservation, but was not insured.

James Thunder, Jr., was survived by his wife, respondent Muriel Jean Thunder, and their three minor children, Karla Jean Thunder, Kristina Marie Thunder, and Kayla May Thunder. The Thunders owned a home near Blackduck, which is outside the Red Lake Reservation. At the time of James Thunder, Jr.'s, death, his wife and children resided on the Red Lake Reservation, and he was a part-time resident of the reservation. He spent some nights with his family on the reservation, and his family spent some nights with him at the home near Blackduck.

Pursuant to Minn.Stat. § 65B.44, subd. 6, Muriel Thunder applied to the Minnesota Automobile Assigned Claims Bureau seeking survivors economic loss benefits on behalf of the three minor children. The claim was assigned to appellant American Family Mutual Insurance Company. American Family denied Muriel Thunder's claim, contending that there is no coverage for claims arising out of a motor vehicle accident that occurred on the Red Lake Reservation and involved a reservation resident occupying an uninsured vehicle licensed and registered under the laws of the reservation. American Family also argued that the children were not entitled to benefits under the assigned claims plan because they were not injured in the accident.

American Family brought a declaratory judgment action seeking a determination that the Thunder children were ineligible for coverage. The parties submitted stipulated facts, and both parties moved for summary judgment. The district court declared that the children were entitled to benefits under the assigned claims plan and granted Muriel Thunder's motion for summary judgment.

## ISSUES

1. Does the assigned claims plan require an insurer to pay basic economic loss bene-fits for losses arising out of a motor vehicle accident that occurred on the Red Lake Reservation and involved an uninsured motor vehicle that was licensed and registered under the laws of the reservation?

2. Does the assigned claims plan require an insurer to pay basic economic loss benefits to the surviving minor children of the owner of an uninsured automobile when the children were not injured in the accident in which the uninsured owner was killed?

## ANALYSIS

On appeal from a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). This "court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

Statutory interpretation is a legal question that this court reviews de novo. *Mueller v. Theis*, 512 N.W.2d 907, 910 (Minn.App.1994), *review denied* (Minn. Apr. 28, 1994). When a statute speaks for itself, the letter of the law must be followed, and there is no room for judicial construction. *Green Giant Co. v. Commissioner of Revenue*, 534 N.W.2d 710, 712 (Minn.1995). Courts must give effect to the plain meaning of a statute when the language is clear and unambiguous. *Id.* "This court cannot supply language that the legislature may have omitted or overlooked." *State v. Hulst*, 510 N.W.2d 262, 264 (Minn.App.1994) (citation omitted).

1. Appellants argue that because the State of Minnesota has no authority to enforce the mandatory-insurance provisions of the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–

65B.71 (1998), with respect to reservation residents, reservation residents should not be allowed to collect benefits under the no-fault act. Appellants also claim that under Minn.Stat. § 65B.64, subd. 2 (1998), a reparation obligor that is assigned a claim under the assigned claims plan may seek indemnification from an uninsured tortfeasor. They contend that because a servicing insurer may not pursue an indemnification claim against a member of an Indian tribe when the accident occurred on a reservation, it is illogical and untenable to apply one part of the no-fault act but not another to persons who reside on reservations.

■ As a general rule, Minnesota courts have no jurisdiction over matters involving Indian reservations unless Congress specifically has yielded such jurisdiction to the state. *Red Lake Band of Chippewa Indians v. State, Comm'r of Pub. Safety,* 311 Minn. 241, 247, 248 N.W.2d 722, 726 (1976).

In Public Law 280, Congress granted Minnesota broad criminal and limited civil jurisdiction over all Indian country within the state, with the exception of Red Lake Reservation.

*State v. Stone,* 572 N.W.2d 725, 728 (Minn. 1997) (footnotes & citation omitted). Public Law 280 did not grant the state general civil regulatory authority. *Id.* at 729.

■ The State of Minnesota, therefore, does not have general jurisdiction over enrolled members of the Red Lake Band of Chippewa residing on their reservation. The state has authority to enforce state sanitation and quarantine laws, to inspect health and education conditions, and to enforce the state's compulsory school attendance laws. *County of Beltrami v. County of Hennepin,* 264 Minn. 406, 413, 119 N.W.2d 25, 30 (1963). But all other civil and criminal jurisdiction over these Indians expressly or by implication remains vested in the federal government, exercised either by it or by Indians under authorized tribal self-government. *Id.* Because of the unique status of the Red Lake Reservation, the state lacks the authority to control vehicle registration within the territorial boundaries of the Red Lake Reservation. *State v. Porter,* 348 N.W.2d 411, 412 (Minn.App.1984) (citing *Red Lake Band of Chippewa Indians,* 311 Minn. 241, 248 N.W.2d 722); *see also Stone,* 572 N.W.2d at 727, 731 (Minn.1997) (state lacks jurisdiction under Public Law 280 to enforce "civil/regulatory" laws such as drivers licensing, vehicle registration, motor vehicle insurance, and proof of vehicle insurance against members of an Indian tribe for conduct occurring within the boundaries of their reservation).

The no-fault act requires automobile owners to maintain insurance for their automobiles. Minn.Stat. § 65B.48, subd. 1 (1998), provides:

> Every owner of a motor vehicle of a type which is required to be registered or licensed or is principally garaged in this state shall maintain during the period in which operation or use is contemplated a plan of reparation security under provisions approved by the commissioner, insuring against loss resulting from liability imposed by law for injury and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle.

The supreme court has explained that the

> legislature is not charitable to uninsured persons driving uninsured vehicles. For the no-fault system to work, persons must contribute premiums to the insurance pool; otherwise, responsible persons carrying insurance become the insurers of those unwilling to pay the true costs involved in establishing a viable no-fault insurance system.

*Balderrama v. Milbank Mut. Ins. Co.,* 324 N.W.2d 355, 358 (Minn.1982). But al-

though there is a clear legislative policy that requires automobile owners to maintain insurance, the no-fault act also recognizes instances where insurance benefits will be available in spite of an owner's failure to maintain insurance.

The assigned claims plan is a part of the no-fault act that was created by the legislature as

a "gap-closing" device "designed to ensure that individuals who are not covered under a plan of reparation security will be entitled to coverage for their economic loss, if they satisfy the conditions for coverage."

*Dahle v. Aetna Cas. & Sur. Ins. Co.*, 352 N.W.2d 397, 399 (Minn.1984) (quoting Michael K. Steenson, *A Primer On Minnesota No-Fault Automobile Insurance*, 7 Wm. Mitchell L.Rev. 313, 368 n. 212 (1981)).

Minn.Stat. § 65B.46, subd. 1 (1998), provides:

If the accident causing injury occurs in this state, *every person suffering loss* from injury arising out of maintenance or use of a motor vehicle * * * *has a right to basic economic loss benefit*.

(Emphasis added.)

Under the assigned claims plan, some persons have a right to basic economic loss benefits even though there is no identified insurance policy that provides coverage. Minn.Stat. § 65B.64, subd. 1 (1998), provides:

A person entitled to basic economic loss benefits because of injury covered by sections 65B.41 to 65B.71 may obtain

basic economic loss benefits through the assigned claims plan or bureau established pursuant to section 65B.63 and in accordance with the provisions for making assigned claims provided in section 65B.41 to 65B.71, if:

(a) The person is 14 years old or younger and basic economic loss benefits are not applicable to the injury because of section 65B.58;

(b) Basic economic loss benefits are not applicable to the injury for some other reason than those specified in section 65B.58, 65B.59, or 65B.60;[1]

(c) The plan of reparation security applicable to the injury cannot be identified; or

(d) A claim for basic economic loss benefits is rejected by a reparation obligor on some ground other than the person is not entitled to basic economic loss benefits under sections 65B.41 to 65B.71.

In addition to the requirements for eligibility contained in section 65B.48, a nonresident is not entitled to basic economic loss benefits if the nonresident is the owner of a motor vehicle and does not carry the minimum automobile insurance coverage required by the state in which the vehicle is registered.

But not every person is entitled to obtain basic economic loss benefits through the assigned claims plan. Minn.Stat. § 65B.64, subd. 3 (1998), provides:

A person shall not be entitled to basic economic loss benefits through the assigned claims plan with respect to injury

---

**1.** Under Minn.Stat. § 65B.58 (1998), a person who converts a motor vehicle, and that person's survivors, are disqualified from receiving basic or optional economic loss benefits. Under Minn.Stat. § 65B.59 (1998), a person who is injured in the course of an official racing contest, other than a rally held in whole or in part on public roads, and that person's survivors, are disqualified from re-

ceiving basic or optional economic loss benefits. Under Minn.Stat. § 65B.60 (1998), a person who intentionally causes or attempts to cause injury, and that person's survivors, are disqualified from receiving basic or optional economic loss benefits arising from the intentional acts. There is no claim that any of these provisions applies to the accidents in this case.

which was sustained if at the time of such injury the injured person was the owner of a private passenger motor vehicle for which security is required under sections 65B.41 to 65B.71 and that person failed to have such security in effect.

\* \* \* \*

Persons, whether or not related by blood or marriage, who dwell and function together with the owner as a family, other than adults who have been adjudicated as incompetent and minor children, shall also be disqualified from benefits through the assigned claims plan.

■ Under Minn.Stat. § 65B.64, subd. 3, the owner of an uninsured vehicle, and competent adults who dwell and function together with the owner as a family, are disqualified from receiving benefits through the assigned claims plan. But minor children who live with the owner of an uninsured vehicle, and adults and children who do not live with the owner, are eligible to receive basic economic loss benefits through the assigned claims plan. There is no language in the statute that suggests that benefits are not available under the assigned claims plan when the benefit claim arises from an accident that occurred on a reservation and involved an uninsured motor vehicle that was licensed and registered under the laws of the Red Lake Reservation.

■ It is undisputed that on the date of the accident that resulted in the claim assigned to appellant State Farm, Sayers, Rosetta Roberts, and Spears did not live with Allen Roberts, Jr., the owner of the uninsured vehicle in which they were riding. Consequently, under the clear and unambiguous language of Minn. Stat. § 65B.64, they are entitled to obtain basic economic loss benefits through the assigned claims plan even though Allen Roberts, Jr., failed to insure his automobile. Similarly, it is undisputed that the

claim assigned to appellant American Family was brought on behalf of James Thunder, Jr.'s, three minor children. Under the clear and unambiguous language of Minn.Stat. § 65B.64, the minor children are entitled to obtain basic economic loss benefits through the assigned claims plan even though James Thunder, Jr., failed to insure his automobile.

2. Appellant American Family also argues that James Thunder, Jr.'s, minor children are not entitled to benefits under the assigned claims plan because they were not injured in the accident. American Family contends that any claim the children have is a derivative claim under a fictional policy allegedly affording coverage to James Thunder, Jr. Therefore, because there is no legislatively created policy under the assigned claims plan that provides coverage for James Thunder, Jr., his children can have no derivative claim under the assigned claims plan.

American Family's argument is refuted by plain and unambiguous language in the no-fault act. As we have already concluded, James Thunder, Jr.'s, minor children are entitled to obtain basic economic loss benefits through the assigned claims plan. Basic economic loss benefits include

a total of $20,000 for income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss **arising out of the injury to any one person**.

Minn.Stat. § 65B.44, subd. 1(b) (1998) (emphasis added).

As James Thunder, Jr.'s, survivors, his children are entitled to obtain benefits for losses that arise out of injury to James Thunder, Jr. The children's entitlement to benefits is based on injury to James Thunder, Jr., not on injury to the children.

## DECISION

The no-fault act explicitly provides that (1) minor children and (2) adults who do

not dwell with and function together as a family with the owner of an uninsured private passenger motor vehicle are entitled to obtain basic economic loss benefits through the assigned claims plan. The no-fault act does not limit application of this provision to motor vehicles that are subject to the vehicle registration authority of the State of Minnesota. Therefore, appellant insurers are obligated to pay economic loss benefits on the claims assigned to them through the assigned claims plan. James Thunder, Jr.'s, minor children are entitled to recover basic economic loss benefits for losses arising out of the injury to James Thunder, Jr.

**Affirmed.**