**Juan Antonio Lojano MUNOZ, Appellant,**

v.

**August Leroy KIHLGREN, et al., Respondents.**

No. CX–02–1908.

Court of Appeals of Minnesota.

May 20, 2003.

302

Steven J. Terry, Terry & Slane, P.L.L.C., Bloomington, MN; and Paul J.

Phelps, Sawicki & Phelps, P.A., Woodbury, MN, for appellant.

Paul W. Godfrey, Votel, Anderson & McEachron, St. Paul, MN, for respondents.

Paul D. Peterson, Harper & Peterson, P.L.L.C., Woodbury, MN, for amicus curiae Minnesota Trial Lawyers Association.

Considered and decided by
SHUMAKER, Presiding Judge,
RANDALL, Judge, and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

After an automobile collision, appellant Juan Munoz, an uninsured driver, sought to recover economic-loss damages from respondents, who were insured. The district court granted respondents' motion for dismissal and dismissed the case with prejudice. Munoz appeals, contending that, under the Minnesota No–Fault Automobile Insurance Act, an uninsured driver may recover economic-loss damages from an insured tortfeasor. We reverse and remand.

### FACTS

Appellant Juan Munoz, the owner and driver of his vehicle, was involved in a collision with August Kihlgren, who was driving a vehicle owned by Schaefer Hardwood Floors. The parties do not dispute Kihlgren's liability.

Munoz's vehicle was not insured on the day of the accident; the vehicle driven by Kihlgren was insured. Munoz sued Kihlgren and Schaefer Hardwood Floors (respondents collectively) for his injuries, and the parties settled noneconomic-damage claims. The parties also stipulated to the amount of Munoz's medical bills, but disputed whether Munoz could recover such economic damages from respondents. Re-

spondents moved to dismiss the case. The district court granted respondents' motion, concluding that under two cases interpreting the Minnesota No–Fault Automobile Insurance Act, *Banks v. Grant*, 549 N.W.2d 89 (Minn.1996), and *Ramsamooj v. Olson*, 574 N.W.2d 751 (Minn.App.1998), *review denied* (Minn. June 17, 1998), Munoz could not maintain a negligence action seeking economic-loss damages against respondents. Munoz now appeals.

## ISSUE

■ May an uninsured motorist recover economic-loss damages from an insured tortfeasor?

## ANALYSIS

■ In reviewing cases that were dismissed for failure to state a claim on which relief can be granted, the only question before the reviewing court is whether the complaint sets forth a legally sufficient claim for relief. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn.1997).

Munoz argues that the district court erred when it ruled that, as an uninsured plaintiff, he is precluded from maintaining a negligence action against an insured tortfeasor for economic-loss damages. Under the Minnesota No–Fault Automobile Insurance Act (the Act), every owner of a motor vehicle must have insurance that provides for basic economic-loss benefits. Minn.Stat. § 65B.48, subd. 1 (2002). Economic loss includes benefits for medical expenses, disability, and income loss. Minn.Stat. § 65B.44 (2002); *Loven v. City of Minneapolis*, 639 N.W.2d 869, 870–71 (Minn.2002). Economic loss may be contrasted with noneconomic loss, which includes "pain and suffering, loss of consortium, and inconvenience." Minn.Stat. § 65B.43, subd. 8 (2002).

In reaching its determination, the district court analyzed Minn.Stat. § 65B.51, subd. 2 (2000), which states:

A person may bring a negligence action for economic loss not paid or payable by a reparation obligor or through the assigned claims plan because of *any lack of insurance coverage* for the economic loss described in section 65B.44, daily or weekly dollar limitations of section 65B.44, the seven-day services exclusion of section 65B.44, the limitations of benefits contained in section 65B.44, subdivision 1, or an exclusion from coverage by sections 65B.58 to 65B.60.

(Emphasis added).

Munoz argues that the words of the statute are clear and unambiguous and that they permit his case against respondents to proceed. He asserts that the language "any lack of insurance coverage" permits him, a person without no-fault insurance, to sue a tortfeasor for economic loss. Specifically, he maintains that the clear and unambiguous language regarding the right to recover makes no distinction based on the insured status of the injured party. Munoz also argues that, although the statute is unambiguous, the legislative history of Minn.Stat. § 65B.51, subd. 2, if considered, provides guidance as to the meaning of the statute. Respondents counter that prior interpretations of Minn. Stat. § 65B.51, subd. 2, preclude Munoz's suit against them.

■ We begin our analysis by examining the language of the statute. When interpreting a statute, we first look at whether the statute's language, on its face, is clear and unambiguous. Minn.Stat. § 645.16 (2002) (stating that "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."); *Am. Family Ins.*

*Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). A statute is only ambiguous when its language is subject to more than one reasonable interpretation. *Id.* Words and phrases in the statute are to be construed according to their plain and ordinary meaning. *Id.* Section 65B.51, subdivision 2, contemplates, in explicit language, "a negligence action for economic loss * * * because of *any lack* of insurance coverage." Minn.Stat. § 65B.51, subd. 2 (emphasis added). "Any" means "[o]ne, some, every, or all without specification." *The American Heritage College Dictionary* 61 (3d ed.2000). "Lack" means "[a] deficiency or an absence." *Id.* at 757. In terms of insurance coverage, "any lack" means something less than coverage that compensates an individual for all economic losses incurred. Thus, our analysis focuses on whether "lack" of insurance means a *deficiency* in coverage, a complete *absence* of coverage, or both.

"Any lack of insurance" can be interpreted to apply to an injured person who has no-fault insurance, but, because of limits imposed by the Act, was not compensated for the entirety of the injured person's loss. *See* Theodore J. Smetak, et al., *Minnesota Motor Vehicle Insurance Manual,* 221–22 (3d ed.2000) (explaining that Minn.Stat. § 65B.51, subd. 2, permits individuals to sue to recover difference between loss incurred and benefit paid). In such an instance, the injured person would have a deficiency in coverage. "Any lack of insurance" also can be interpreted to apply to an absence of coverage, where the injured person simply does not have no-fault insurance. The use of the word "any" to modify "lack" shows that the more expansive reading, one which includes both a deficiency in insurance coverage and an absence of it, is the appropriate manner of interpreting the statute. Accordingly, a plain reading of the statute permits a person without no-fault insurance to sue for economic loss.

■ We conclude that the language of Minn.Stat. § 65B.51, subd. 2, is unambiguous, and we construe it to permit an injured person to commence an action for economic damages, even though the person is not covered by no-fault insurance. But even if we were to consider the statute's language ambiguous, the legislative history of Minn.Stat. § 65B.51, subd. 2, evinces an intent to permit a person in Munoz's position to sue for economic loss. If the language of a statute is ambiguous, we "determine the probable legislative intent and give the statute a construction that is consistent with that intent." *Tuma v. Comm'r of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986) (citations omitted); *see also* Minn.Stat. § 645.16 (stating that "[w]hen the words of a law are not explicit, the intention of the legislature may be ascertained."). Minn.Stat. § 645.16 lists methods to determine legislative intent and includes considering the circumstances under which the law was enacted and examining any former law that preceded the statute in question. Minn.Stat. § 645.16(2), (5).

Before the 1989 amendment that created the statute's current form, Minn.Stat. § 65B.51, subd. 2, lacked the clause referring to "any lack of insurance coverage." The earlier version of the statute read:

> A person may bring a negligence action for economic loss not paid or payable by a reparation obligor because of daily or weekly dollar limitations of section 65B.44, the seven-day services exclusion of section 65B.44, the limitations of benefits contained in section 65B.44, subdivision 1, or an exclusion from coverage by sections 65B.58 to 65B.60.

Minn.Stat. § 65B.51, subd. 2 (1984).

This earlier version of the statute was interpreted by the Minnesota Supreme

Court in *Rehnelt v. Stuebe,* 397 N.W.2d 563, 565 (Minn.1986). Although that case involved two separate lawsuits, the parties were similarly situated to the parties in the instant case, and in one of the cases, the parties were identically situated. Rehnelt was an uninsured motorist who was involved in an accident with Stuebe, whose vehicle was insured. *Id.* at 563–64. The supreme court held that, because Rehnelt was uninsured, his negligence action for economic loss was barred. *Id.* at 566. In reaching its conclusion, the supreme court reasoned that, because the Act's purpose is to reduce the amount of tort litigation in relation to auto accidents, permitting suits by uninsured plaintiffs would undermine the purpose and "shake the underpinnings of the Minnesota No–Fault Automobile Insurance Act." *Id.* at 565–66.

In 1989, the Minnesota Legislature amended the statute to its current form. 1989 Minn. Laws ch. 58, § 1. Secondary authorities argue that the amended statute effectively overrules *Rehnelt. See* Smetak, *supra,* at 222 (stating that "the statute was amended to specifically provide that a right to recover economic loss in a tort action would not be prohibited for individuals * * * lacking no-fault insurance."); Michael K. Steenson, *Minnesota No–Fault Automobile Insurance* § 15.10 (3d ed.2002) (stating that "there is no doubt that the new words placed in the statute say [that] a negligence action for economic losses can be brought by a person who has not been paid for economic loss due to 'lack of insurance.' "). Our review of the change in the statutory language and the circumstances preceding it leads us to conclude that the legislature intended to, and indeed did, expand the scope of Minn.Stat. § 65B.51, subd. 2, to include individuals who do not have no-fault insurance.

The thrust of respondents' argument is that two cases that peripherally examined Minn.Stat. § 65B.51, subd. 2, *Banks v. Grant,* 549 N.W.2d 89 (Minn.1996), and *Ramsamooj v. Olson,* 574 N.W.2d 751 (Minn.App.1998), *review denied* (Minn. June 17, 1998), should control here. In *Banks,* the plaintiff was a passenger in an uninsured vehicle involved in an accident with an insured vehicle owned by Grant. *Banks,* 549 N.W.2d. at 90. Banks applied to the assigned-claims plan [1] for no-fault benefits, and his claim was assigned to American Family. Banks sued the driver and owner of the other vehicle and the jury returned a verdict in favor of Banks. *Id.* The defendants then moved for a setoff paid or payable by American Family, arguing that the Grants were obligated to pay Banks. *Id.* at 90. The Minnesota Supreme Court reversed the district court's denial of the Grants' motion, ruling that Minn. Stat. § 65B.51, subd. 2, only permitted Banks to sue the owner/operator of the vehicle in which he was riding. *Id.* at 91.

Although the *Banks* court examined Minn.Stat. § 65B.51, subd. 2, in order to reach its conclusion, *Banks* is distinguishable from the instant case, because it relied on an analysis of the subrogation rights of an assigned-claims-plan insurer, under Minn.Stat. § 65B.51, subd. 1, not the rights of an injured, uninsured driver to recover for his losses under Minn.Stat.

1. The "assigned-claims plan" is a component of Minnesota's no-fault insurance scheme, which

    was created by the legislature as a gap-closing device designed to ensure that individuals who are not covered under a plan of reparation security will be entitled to coverage for their economic loss, if they satisfy the conditions for coverage.

    *State Farm Mut. Auto. Ins. Co. v. Thunder,* 605 N.W.2d 750, 755 (Minn.App.2000) (citation and quotation omitted); *see also* Minn. Stat § 65B.63 (2002) (describing assigned-claims plan); Minn. Stat § 65B.64 (explaining eligibility for assigned-claims plan).

§ 65B.51, subd. 2. *See* Steenson, *supra*, § 16.02(1)(d) (stating that *Banks* "did not directly involve the right of an uninsured person to recover for uncompensated economic loss against an uninsured defendant."). Further, *Banks* did not examine *Rehnelt* or the impact of the 1989 amendment. Because we consider *Banks* distinguishable, we conclude that it is not controlling here.

In our decision in *Ramsamooj v. Olson*, 574 N.W.2d 751, 752–53 (Minn.App.1998), Ramsamooj, an uninsured plaintiff, was involved in an auto accident with Olson, who was driving an insured vehicle. *Id.* at 752. In *Ramsamooj*, the parties disputed a claim for *noneconomic* loss, not economic loss. *Id.* Ramsamooj sued Olson in a negligence action for noneconomic loss, and Olson moved to dismiss the noneconomic-loss claims. *Id.* The district court dismissed the noneconomic-loss claims, and Ramsamooj appealed. *Id.* Reaching beyond the analysis necessary to address the disputed noneconomic-loss claim at issue in the case, the *Ramsamooj* decision, in dictum, also noted the manner in which the Act addresses *economic* loss, stating that, as an uninsured plaintiff, Ramsamooj could not bring a negligence action for economic loss against Olson. *Id.*

*Ramsamooj*'s holding does not address the precise issues raised here, however, because only the noneconomic-loss claim was at issue there. The parties did not even raise the economic-loss claim before this court. Also, the *Ramsamooj* court considered neither the *Rehnelt* decision nor the 1989 amendment. *Ramsamooj*'s discussion of economic loss is not dispositive, and we do not consider it controlling

here. *See Pecinovsky v. AMCO Ins. Co.*, 613 N.W.2d 804, 808 (Minn.App.2000) (dicta not controlling), *review denied* (Minn. Sept. 26, 2000).

In addition to the plain language of the statute and the distinguishable facts of this case, we conclude that preventing Munoz from maintaining a negligence action for economic loss against respondents would result in an unjustifiable windfall for the negligent tortfeasor and a penalty that is inconsistent with the Act. Other sanctions exist to penalize drivers who fail to obtain no-fault insurance coverage. *See, e.g.,* Minn.Stat. § 169.797, subd. 2 (2002) (stating that vehicle owner who fails to obtain no-fault insurance guilty of crime); Minn. Stat. § 65B.49, subd. 3a(7) (2002); Minn. Stat. § 65B.64, subd. 3 (denying economic-loss benefits through no-fault assigned-claims plan to uninsured individuals). In the absence of explicit statutory authority to impose this sanction, we decline to infer it.

## DECISION

Minn.Stat. § 65B.51, subd. 2, permits Munoz, an uninsured motorist, to maintain a negligence action for economic-loss damages against respondents. We, therefore, reverse the district court's order dismissing Munoz's claim and remand for proceedings not inconsistent with this opinion.

**Reversed and remanded.**