Marian **PEEVY**, Appellant,

v.

**MUTUAL SERVICES CASUALTY IN-SURANCE COMPANY**, Respondent.

No. C5–83–610.

Supreme Court of Minnesota.

March 23, 1984.

James A. Wellner, West St. Paul, for appellant.

Jon J. Arcand, St. Paul, for respondent.

PETERSON, Justice.

Appellant, Marian Peevy, brought this action seeking survivor's economic loss benefits under a no-fault automobile insurance policy issued by respondent, Mutual Services Casualty Insurance Company, to her ex-husband, Paul E. Peevy. The trial judge granted summary judgment in favor of respondent, finding that Marian Peevy was "not a 'surviving dependent' entitled to survivor's economic loss benefits pursuant to Minnesota Statutes § 65B.44(6)." On the basis of the insurance policy language, we reverse.

The issue presented on appeal is whether appellant is entitled to survivor's economic loss benefits under the insurance policy issued by respondent. Paul and Marian Peevy were married on April 22, 1948. Their marriage was dissolved on September 29, 1980. Under the dissolution decree, Marian Peevy was awarded spousal maintenance in the amount of $350 per month plus hospital and medical insurance coverage. Marian Peevy received 87% of her monthly income from the maintenance payments.

On August 16, 1981, Paul Peevy died from injuries sustained in a one-vehicle accident. At the time of his death, Paul Peevy was insured by respondent, under a policy which provided "no-fault" coverage, including survivor's economic loss benefits pursuant to Minn.Stat. § 65B.44, subd. 6 (1982), up to a maximum of $10,000.

It is undisputed that Marian Peevy was *actually* dependent upon Paul Peevy for a significant portion of her monthly income. The parties frame the issue for decision as one of statutory interpretation; specifically, whether Marian Peevy, the ex-wife of decedent, is a surviving dependent within the meaning of the following statute:

> Survivors economic loss benefits, in the event of death occurring within one year of the date of the accident, caused by and arising out of injuries received in the accident, are subject to a maximum of $200 per week and shall cover loss accruing after decedent's death of contributions of money or tangible things of economic value, not including services, that his surviving dependents would have received for their support during their dependency from the decedent had he not suffered the injury causing death.
>
> For the purposes of definition under sections 65B.41 to 65B.71, the following described persons shall be presumed to be dependents of a deceased person: (a) a wife is dependent on a husband with whom she lives at the time of his death; (b) a husband is dependent on a wife with whom he lives at the time of her death; (c) any child while under the age of 18 years, or while over that age but physically or mentally incapacitated from earning, is dependent on the parent with whom he is living or from whom he is receiving support regularly at the time of the death of such parent. Questions of the existence and the extent of dependency shall be questions of fact, considering the support regularly received from the deceased.

Minn.Stat. 65B.44, subd. 6 (1982).

The statute is not a model of clarity. One possible reading of the statute, argued by appellant, is that, in addition to the presumed dependent categories of spouse and child, all other persons actually dependent upon decedent are eligible for survivor's economic loss benefits. The last sentence of the statute can be read to support this interpretation. After listing three categories of presumed dependents, the statute provides: "Questions of the *existence* and the extent of dependency shall be questions of fact, considering the sup-

port regularly received from the deceased." (emphasis added). If dependency were limited to the presumed categories, there would be no need for further inquiry into the *existence* of dependency based on regular receipt of support. Consideration of regularly received support is not relevant to the dependency of those persons entitled to a presumption. The last sentence of the statute quoted above could indicate an intent to create an open category of dependents other than those persons presumed to be dependent.

The legislative history supports such an interpretation. When originally enacted in 1974, after describing the presumed dependents the statute stated: *"In all other cases,* questions of the existence and extent of dependency shall be determined in accordance with the facts at the time of the death." Minn.Stat. § 65B.44, subd. 6 (1974) (emphasis added). The emphasized language indicates that the legislature anticipated cases of dependency for persons other than those entitled to a presumption. In 1975, the statute was amended to its present form. In his introduction of the 1975 bill to the Senate Committee on Labor and Commerce, the bill's sponsor, Senator Jack Davies, said that the bill was a technical bill only and that it "does not make any substantive changes." The reason for the change, in Senator Davies' words, was that "dependency has to be determined on a continuing basis rather than as of the time of death." There was no discussion of the elimination of the language "[i]n all other cases." The language allowing inquiry into the *existence* of dependency, however, may make the "[i]n all other cases" language unnecessary and could explain its elimination in the redrafting. In light of Senator Davies' statement that the amendment made no substantive changes, the legislative history supports a conclusion that there can be dependents under the statute other than the presumed dependents.

Professor Michael Steenson reads the statute this way. He states: "Disputes concerning the existence and extent of dependency are fact questions that require consideration of the support that was regularly received from the decedent. The Act, however, presumes certain persons to be dependent * * *." Steenson, *A Primer on Minnesota No-Fault Automobile Insurance,* 7 Wm. Mitchell L.Rev. 313, 336 (1981). This language implies that in addition to persons presumed to be dependent, there are other cases of dependency which should be decided as fact questions. There is no language in the statute itself which prohibits a finding that an ex-spouse is in fact dependent and thus entitled to survivor's economic loss benefits.

The other possible reading of the statute, argued by respondent, is that "surviving dependents" under the no-fault statute are limited to persons in the three presumed categories. An alternative interpretation of the language "[q]uestions of the existence * * * of dependency" is that it refers to the presence of the conditions required for a person to come within a presumed category. For example, it could refer to the question whether a spouse lived with the deceased spouse, whether a child was physically or mentally incapacitated, or whether a child regularly received support. The last phrase of the sentence, "considering the support regularly received from the deceased," can be interpreted to refer to the issue of the extent of dependency only.

Other Minnesota statutes evince a legislative intent not to extend dependency status to an ex-spouse. The workers' compensation statute defining dependents, Minn. Stat. § 176.111, subds. 1–4 (1982), clearly limits dependency status to persons in specifically enumerated relationships to the deceased. Similarly, under the intestate succession law, Minn.Stat. § 525.16 (1982), the probate code, Minn.Stat. § 524.2–508 (1982), and the wrongful death statute, Minn.Stat. § 573.02 (1982), an ex-spouse would have no right to recover. In each of these statutes, the legislature specifically described the relationship a beneficiary must have to the deceased.

In addition, Minn.Stat. § 518.64, subd. 3 (1982), provides that "the obligation to pay

future maintenance is terminated upon the death of either party * * *." Respondent argues that because appellant's right to maintenance payments terminated at the time of Paul Peevy's death, her dependency did not survive. The statutory provision of survivor's economic loss benefits for "surviving dependents" does not necessarily require the survival of a legal right to support but simply requires that a dependent person live beyond the death of a person covered by no-fault insurance. In contrast to the termination of the maintenance obligation upon the death of a spouse, a child support obligation continues after the death of the parent. Minn.Stat. § 518.64, subd. 3 (1982). These provisions may reflect a legislative determination that an ex-spouse loses status as one entitled to support while a child retains that status because of a greater need. On the other hand, the legislature may have recognized that most ex-spouses would not be a "natural object of decedent's bounty" and, therefore, a decedent's estate should not be burdened by that obligation, while a child support obligation would more likely be a payment that a decedent would choose to make.

The preceding discussion makes clear that the survivor's economic loss benefits statute is far from clear. We have decided that the insurance policy language in this case is clear and determinative, and, therefore, we do not attempt to interpret the statute. We do, however, commend the statute to the legislature for clarification.

The automobile insurance policy, which covered Paul Peevy and provided for survivor's economic loss benefits, was drafted by respondent and defined "survivor" as:

1. The spouse, if living with the **insured**;

2. Any child under 18 years old. Also, any older child who is not self-supporting due to a physical or mental disability. The child must be living with or supported by the **insured**; and

3. Any other person dependent upon the **insured** at the time of the **insured's** death.

A person is no longer a **survivor** when that person's status would no longer be one of dependency if the deceased **insured** were alive.

The third category listed clearly includes an ex-spouse who was actually dependent on the deceased spouse. Therefore, we hold that appellant, Marian Peevy, is entitled to survivor's economic loss benefits under the insurance policy language.

Reversed.