Patricia DAHLE, Trustee of the Estate of Bruce Lee Dahle and Patricia Dahle, Individually, Appellant,

v.

AETNA CASUALTY AND SURETY INSURANCE COMPANY, Respondent.

No. C8–83–729.

Supreme Court of Minnesota.

Aug. 3, 1984.

Sarah Lewerenz, Hibbing, for appellant.

James A. Stein, St. Paul, for respondent.

AMDAHL, Chief Justice.

Bruce Lee Dahle died in a head-on automobile collision on December 24, 1981. Dahle was survived by his wife, appellant Patricia Dahle, and his then unborn child. At the time of his death Dahle was operating an uninsured 1969 Buick which he purchased shortly prior to the fatal accident. Dahle also owned a 1956 Ford truck used for show purposes. The Ford was uninsured at the time of Dahle's death, but was inoperable and had been for the previous 3 months, its engine having been removed from the truck's chassis.

After Dahle's death, Patricia Dahle applied for survivor's economic loss benefits, Minn.Stat. § 65B.44, subd. 6 (1982), with the Minnesota Assigned Claims Bureau.[1] Appellant's claim was assigned to respondent Aetna Casualty and Surety Company. Appellant claimed benefits for herself [2] and

---

1. *See* Minn.Stat. §§ 65B.63.–.65 (1982).

2. Appellant later dismissed her claim for benefits for herself.

her then unborn child. The child was born September 7, 1982.

Respondent refused to pay survivor's loss benefits to appellant and her unborn child. Appellant initiated this action and on April 6, 1983, the St. Louis County District Court granted respondent's motion for summary judgment. We reverse and remand.

The critical issue raised in this appeal is whether a posthumous child is entitled to survivor's loss benefits under the Minnesota Assigned Claims Plan, Minn.Stat. §§ 65B.63–.65 (1982). This is an issue that was not directly addressed by the legislature in the no-fault act. Resolution of this issue thus requires us first to examine and analyze the purpose and intent of the assigned claims plan and then to determine whether recovery in the instant case furthers that legislative purpose and intent.

1. When the legislature enacted the no-fault act, it included a "gap-closing" device "designed to ensure that individuals who are not covered under a plan of reparation security will be entitled to coverage for their economic loss, if they satisfy the conditions for coverage." Steenson, *A Primer on Minnesota No-Fault Automobile Insurance*, 7 Wm. Mitchell L.Rev. 313, 368 n. 212 (1981) (hereinafter cited as Steenson). *See* Minn.Stat. §§ 65B.63–.65 (1982). The assigned claims plan provides basic economic loss benefits for individuals "who cannot procure their own protection because neither they nor any relative residing in the same household owns an automobile or *because of their youth.*" Mickelson v. American Family Mut. Ins. Co., 329 N.W.2d 814, 818 (Minn.1983) (emphasis add-

ed). *See also* Steenson, *supra* at 368 n. 212. Providing innocent parties with basic economic loss benefits promotes the policies underlying the no-fault act. *See Kaysen v. Federal Insurance Co.*, 268 N.W.2d 920, 926 (Minn.1978).

Under Minn.Stat. § 65B.64, subd. 1 (1982), an individual is entitled to participate in the assigned claims plan if any one of the following four criteria is met:

1) The individual is 14 years old or younger and is precluded from recovering basic economic loss benefits because he is a converter of an automobile;

2) The individual is precluded from recovering basic economic loss benefits for reasons other than automobile conversion, injury during a race or an intentional injury;

3) A plan providing basic economic loss benefits is not ascertainable; or

4) A claim for basic economic loss benefits is rejected by the insurer on a nonstatutory ground.

*See* Minn.Stat. § 65B.64, subd. 1 (1982).[3]

Subdivision 2 of Minn.Stat. § 65B.64 grants an assigned claims reparation obligor a subrogation right similar to that found in Minn.Stat. § 65B.53, subd. 2 (1982). Subdivision 3 of Minn.Stat. § 65B.64 precludes participation in the assigned claims plan by individuals who fail to maintain a plan of reparations security required by Minn.Stat. § 65B.48 (1982) or by individuals *other than minor children* who reside in a household of a person failing to comply with Minn.Stat. § 65B.48 (1982). *See* Minn.Stat. § 65B.64, subd. 3 (1982); *see also Mickelson,* 329 N.W.2d at

---

3. Section 65B.64, subd. 1, provides as follows:

A person entitled to basic economic loss benefits because of injury covered by sections 65B.41 to 65B.71 may obtain basic economic loss benefits through the assigned claims plan or bureau established pursuant to section 65B.63 and in accordance with the provisions for making assigned claims provided in sections 65B.41 to 65B.71, if:

(a) The person is 14 years old or younger and basic economic loss benefits are not applicable to his injury because of section 65B.58;

(b) Basic economic loss benefits are not applicable to the injury for some reason other than those specified in sections 65B.58, 65B.59, or 65B.60;

(c) The plan of reparation security applicable to the injury cannot be identified; or

(d) A claim for basic economic loss benefits is rejected by a reparation obligor on some ground other than the person is not entitled to basic economic loss benefits under sections 65B.41 to 65B.71.

Minn.Stat. § 65B.64, subd. 1 (1982).

817–18; *Balderrama v. Milbank Mut. Ins. Co.,* 324 N.W.2d 355, 358 (Minn.1982); *Iverson v. State Farm Mut. Auto. Ins. Co.,* 295 N.W.2d 573, 576 (Minn.1980); *Kaysen v. Federal Ins. Co.,* 268 N.W.2d 920, 926–27 (Minn.1978).

There is no dispute that the assigned claims plan, as a gap-filling device, is designed to protect children 14 years old or younger. This case requires us to define the scope of this protection. More specifically, does the assigned claims plan contemplate recovery of basic economic loss benefits by posthumous children?

Respondent asserts that the definitions of "surviving dependent" contained in Minn.Stat. § 65B.44, subd. 6, and of "child" contained in Minn.Stat. § 645.45 (1982) unequivocally preclude recovery of basic economic loss benefits under the assigned claims plan by Bruce Dahle's surviving child.

Section 65B.44, subd. 6, provides that "the following described persons shall be *presumed* to be dependents of a deceased person: * * * (c) any child * * * is dependent on the parent * * * from whom he is receiving support *regularly* at the time of the death of such parent." (emphasis added.) Furthermore, "[q]uestions of the *existence* and the extent of dependency shall be questions of fact, considering the support regularly received from the deceased." Minn.Stat. § 65B.44, subd. 6 (1982) (Emphasis added). Arguably the phrase "at the time of the death" requires dependents to be in existence and *in fact* dependent upon the decedent at that specific point in time in order to qualify for survivor's economic loss benefits. Minn.Stat. § 65B.44, subd. 6 (1982), also can be read to outline obvious situations of dependency. *Cf. Peevy v. Mutual Services Casualty Insurance Co.,* 346 N.W.2d 120, 122 (Minn.1984). The present case cannot be characterized as obvious. Dependency is a question of fact by definition. It is difficult to ignore the fact that

an unborn child is *in fact* dependent on the family wage earner. The dependence may be indirect by virtue of biology but it does nevertheless exist. Hence, the definition of dependency contained in Minn.Stat. § 65B.44, subd. 6 (1982), is not conclusive with respect to resolving the present issue.

Section 645.45, subd. 8 (1982), defines a "child or children" as including children by birth or adoption. Respondent argues that the presence of the word "birth" logically implies that the child is born. Appellant asserts that "birth or adoption" are used comparatively to elevate adopted children to the same status as natural children. Appellant's construction of Minn.Stat. § 645.-45, subd. 8 (1982), is logical, particularly when considered in light of the legislature's policy of treating adopted and natural children similarly.[4]

Read together, the definition of "surviving dependent" contained in Minn.Stat. § 65B.44, subd. 6 (1982), and the definition of child contained in Minn.Stat. § 645.45, subd. 8 (1982), do not unequivocally preclude recovery of basic economic loss benefits by Dahle's surviving posthumous child under the assigned claims plan.

■■■ Juxtaposition of the statutory definitions of surviving dependent and child leads us to three general conclusions. First, children are presumed to be dependent upon their parents under the no-fault act. Minn.Stat. § 65B.44, subd. 6 (1982). Second, dependency is a question of fact in situations where dependency is not presumed. *Id.* And finally, the general statutory definition of child contained in Minn. Stat. § 645.45, subd. 8 (1982), includes children by both birth and adoption.

The legislature's treatment of posthumous children parallels its careful protection of adopted children. Both the workers' compensation act and the probate law accord posthumous children the same rights as children living at the time of death.

---

**4.** *See, e.g.,* Minn.Stat. § 259.29, subd. 1 (1982), which provides in part that "[u]pon adoption, the child shall become the legal child of the adopting persons and they shall become the

legal parents of the child with all the rights and duties between them of natural parents and legitimate child." *Id.*

Whether a dependent of a deceased or injured employee is entitled to workers' compensation benefits is governed by Minn.Stat. § 176.111, subd. 1 (1982). Subdivision 1(b) conclusively presumes that children under 18 years of age are wholly dependent. Minn.Stat. § 176.111, subd. 1(b) (1982). Under the workers' compensation act the definition of child includes posthumous children. Minn.Stat. § 176.011, subd. 2 (1982). Consequently, if Dahle's surviving child was claiming workers' compensation benefits there would be no question as to that child's entitlement to those benefits.

Both the workers' compensation act and the no-fault act are designed to be remedial. *See Griebel v. Tri-State Insurance Co.*, 311 N.W.2d 156, 158 (Minn.1981). Furthermore, benefits under both laws serve similar purposes.[5] *Id.* The similar policies, purposes and protections of the workers' compensation act and the no-fault act support a construction of Minn.Stat. § 65B.44, subd. 6 (1982), which includes posthumous children within the definition of surviving dependent.

Further foundation for this construction is provided by the protection accorded posthumous children by the probate law. Under Minn.Stat. § 525.171 (1982) "[a] posthumous child * * * [is] considered as living at the death of its parent." *Id.*

■ The protection afforded posthumous children under both the probate law and workers' compensation act manifest a legislative intent to eliminate any distinction between posthumous children and children born prior to decedent's death. Posthu-

mous children fall within the class of innocent parties the assigned claims plan was designed to protect by providing basic economic loss benefits. In sum, we hold that a posthumous child is included within the definition of surviving dependent, Minn. Stat. § 65B.44, subd. 6 (1982), and is entitled to recover benefits under the no-fault assigned claims plan, Minn.Stat. §§ 65B.63–.65 (1982).[6] This holding is consistent with the policy underlying the assigned claims plan and the no-fault act.

2. Respondent raises an additional issue on appeal. On October 7, 1982, respondent served appellant, by mail, with requests for admissions pursuant to Rule 36.01 of the Minnesota Rules of Civil Procedure. More than 2 months later, on December 13, 1982, appellant submitted responses to those requests. Respondent asserts that appellant's failure to answer the requests for admissions within the 30-day time period provided by Rule 36.01 results in admission of the requests. The district court below held that appellant's responses, although untimely, were nevertheless sufficient. Appellant's tardiness, therefore, did not result in admissions. We affirm the trial court on this issue.

Rule 36.01 provides as follows:

The party who has requested the admissions may move to determine the sufficiency of the answers or objections. *Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule,* it may order either that the matter is ad-

*Griebel,* 311 N.W.2d at 158 (footnote omitted).

---

5. In *Griebel* we observed:

It is the express purpose of the no-fault act to "provide prompt payment of specified basic economic loss benefits" and to "relieve the severe economic distress of uncompensated victims of automobile accidents." Minn.Stat. § 65B.42(1) (1980). Similarly, this court has viewed the workers' compensation statute to be "a highly remedial statute [that] should not be construed so as to deny benefits unless it clearly appears that the [injury] * * * does not come within the protection of the act." *Epp v. Midwestern Machinery Co.*, 296 Minn. 231, 233, 208 N.W.2d 87, 88 (1973).

6. Our holding that a posthumous child is entitled to survivor's economic loss benefits under the assigned claims plan is limited to posthumous children that are born. Our holding does not apply to a claim on behalf of a then unborn child that is later aborted, naturally or otherwise. Of course, the time period provided by Minn.Stat. § 65B.54, subd. 1, does not begin to run until the insurer is notified of the birth of the child.

mitted or that an amended answer be served. The court may, in lieu of these *orders,* determine that final disposition of the request be made at a pre-trial conference or at a designated time prior to trial.

Minn.R.Civ.P. 36.01 (emphasis added). *See also* 8 Wright & Miller, Federal Practice and Procedure § 2257, 719 (1970). Wright and Miller assert "that the admission that otherwise would result from a failure to make a timely answer should be avoided when to do so will aid in the presentation of the merits of the action and will not prejudice the party who made the request." *Id.* at 720. *See also Hadra v. Herman Blum Consulting Engineers,* 74 F.R.D. 113 (N.D.Tex.1977); *Marshall v. District of Columbia,* 391 A.2d 1374 (D.C.Ct.App. 1978).

▉ Respondent asserts that appellant's untimely response to the requests results in admission. Specifically, the admission would be that the 1-month-old fetus was not dependent upon Bruce Dahle. This is an ultimate issue in this case; although requests for admission concerning opinions and conclusions are permissible, *see* Rule 36.01, Minn.R.Civ.P., admission of such requests by fiat without prejudice to the opposing party is not favored. *See id.* Moreover, allowing an extension in these circumstances is within the discretion of the trial court.

▉ This case does not involve a failure to answer requests for admission—it only involves an untimely response. The trial court determined that the response was sufficient and therefore impliedly within the spirit of Rule 36.01. To allow respondent to rely on technicalities to obtain the admission of a critical factual issue subverts the information gathering purpose of the discovery rules. We hold that appellant's failure to respond in a timely manner to the requests in the instant case does not result in admission of those requests.

Affirmed in part and reversed and remanded in part.