AUTO OWNERS INSURANCE
COMPANY, Respondent,

v.

Chong Suk PERRY, Appellant.

No. A06–1235.

Supreme Court of Minnesota.

May 29, 2008.

Michael Alen Bryant, Bradshaw & Bryant, PLLC, Waite Park, MN, for Appellant.

Judith Ann Mlinar Seeberger, Reding & Pilney PLLP, Lake Elmo, MN, for Respondent.

Philip Andres Duran, Minneapolis, MN, for Outfront MN Amicus.

James S. Ballentine, Schwebel, Goetz & Sieben, PA, Minneapolis, MN, for MN Assoc. for Justice Amicus.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Chong Suk Perry applied to respondent Auto Owners Insurance Company for survivors' economic loss benefits after her boyfriend, Daniel Savage, with whom she resided, died in a motor vehicle accident. Auto Owners denied Perry's claim, and Perry petitioned for arbitration. After staying arbitration, the district court granted Auto Owners' motion for summary judgment. The court of appeals held that the district court did not err in concluding that the definition of "dependent" in Minn. Stat. § 65B.44, subd. 6 (2006), is limited to a decedent's surviving spouse and children and that Perry is thus not entitled to survivors' economic loss benefits under the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–65B.71 (2006). We affirm.

Respondent Auto Owners Insurance Company issued a garage liability insurance policy to Kincaids Cars, Inc., an automobile sales company owned by Daniel Savage. Savage was fatally injured in a motor vehicle accident while driving a vehicle owned by the company. Auto Owners paid out $20,000 in medical benefits and $2,000 in non-medical benefits under the policy.

For approximately 7 years preceding his death, Savage had lived in Savage, Minnesota, with his girlfriend, appellant Chong Suk Perry. According to Perry, she and Savage owned their home together, had a joint checking account, and pooled their financial resources. Perry applied for survivors' economic loss benefits in June 2005, and Auto Owners denied her claim on the ground that the policy provides for the payment of survivors' economic loss benefits only to the decedent's surviving spouse and children. After Perry sought arbitration of her claim, Auto Owners commenced an action for declaratory judgment and brought a summary judgment motion. Auto Owners contended that Perry failed to qualify as a "dependent" under the insurance policy and that the policy comported with the requirements of the No–Fault Act. The No–Fault Act requires insurers to offer survivors' economic loss benefits to a decedent's "surviving dependents." Minn.Stat. § 65B.44, subd. 6. The Act sets forth the following definition of "dependent":

> For the purposes of definition under section 65B.41 to 65B.71, the following described persons shall be presumed to be dependents of a deceased person: (a) a wife is dependent on a husband with whom she lives at the time of his death; (b) a husband is dependent on a wife with whom he lives at the time of her death; (c) any child while under the age of 18 years, or while over that age but physically or mentally incapacitated from earning, is dependent on the parent with whom the child is living or from whom the child is receiving support reg-

ularly at the time of the death of such parent. Questions of the existence and the extent of dependency shall be questions of fact, considering the support regularly received from the deceased. *Id.* The district court granted Auto Owners' summary judgment motion.

The court of appeals affirmed the district court's grant of summary judgment, concluding that section 65B.44, subd. 6, "defines a 'dependent' * * * as a 'wife' or 'husband' of the deceased, or 'any child' of a deceased parent." *Auto Owners Ins. Co. v. Perry*, 730 N.W.2d 282, 285 (Minn.App. 2007) (quoting Minn.Stat. § 65B.44, subd. 6). The court of appeals rejected Perry's contention "that the last sentence of the [A]ct's definition of 'dependent' creates a broader class of dependents" than is provided for in Auto Owners' insurance policy. *Id.*

■■■ Perry concedes that she does not qualify as a dependent under the terms of the insurance policy; she argues, rather, that by providing for the payment of survivors' economic loss benefits only to a decedent's surviving spouse and children, the policy does not comply with the minimum coverage requirements prescribed in section 65B.44, subd. 6.[1] The paramount goal of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2006). If the language of a statute is unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* But if the statutory language is ambiguous, we may look to other sources to ascertain legislative intent. *See id.* Statutory interpretation is a question of law, which we review de novo. *State v.*

*Al–Naseer*, 734 N.W.2d 679, 683 (Minn. 2007).

■■■ The key to this dispute is an argument about the interpretation of the final sentence of the second paragraph of section 65B.44, subd. 6, which reads, "Questions of the existence and the extent of dependency shall be questions of fact, considering the support regularly received from the deceased." Perry argues that this language creates a class of provable dependents consisting of persons other than the surviving spouse and children of a decedent. Auto Owners, on the other hand, contends that section 65B.44, subd. 6, defines a "dependent" as the decedent's surviving spouse or child and that the final sentence of the subdivision's second paragraph merely permits the presumed dependency of a surviving spouse or child to be rebutted.

We engaged in our most extensive assessment of section 65B.44, subd. 6, in *Peevy v. Mutual Services Casualty Insurance Co.*, in which a decedent's ex-wife sought survivors' economic loss benefits under the decedent's no-fault automobile insurance policy. 346 N.W.2d 120, 121 (Minn.1984). After discussing the arguments in favor of the parties' respective interpretations of section 65B.44, subd. 6, we concluded that the subdivision is ambiguous and held that the ex-wife was entitled to survivors' economic loss benefits under the terms of the policy itself. *Id.* at 121–23. Contrary to the dissent's characterization of *Peevy*, we did not intimate which interpretation of section 65B.44, subd. 6, we found more compelling. Our assessment of section 65B.44, subd. 6, in *Peevy* was dicta, and it is not self-evident

---

1. The No–Fault Act sets forth the statutorily prescribed minimum coverage for automobile insurance policies. *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 278, 280 (Minn. 2000). "[U]nless the policy provides greater protection for the insured than the No–Fault Act, the terms of the policy must be conformed to the provisions of the Act." *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn.2004).

that the subdivision is, in fact, ambiguous. Indeed, because section 65B.44, subd. 6, is devoid of any explicit reference to a class of dependents consisting of persons other than the decedent's surviving spouse and children, we conclude that the better argument is that it is not ambiguous.[2]

Lending further support to Auto Owners' plain language interpretation of section 65B.44, subd. 6, is the subdivision's third paragraph, which provides as follows:

> Payments shall be made to the dependent, except that benefits to a dependent who is a child or an incapacitated person may be paid to the dependent's surviving parent or guardian. Payments shall be terminated whenever the recipient ceases to maintain a status which if the decedent were alive would be that of dependency.

"Status" is defined as "[a] person's legal condition," examples of which include "the status of a father" and "the status of a wife." *Black's Law Dictionary* 1447 (8th ed.2004). Given that a live-in girlfriend does not have a "status" under the law akin to that of a spouse or child and that a decedent's surviving spouse and children are identified as presumed dependents in the preceding paragraph of section 65B.44, subd. 6, the word "status" logically refers to a person's status as a surviving spouse or child of the decedent.[3]

Because Perry is not Savage's surviving spouse or child, she does not have a "status" that she must "maintain" in order to continue receiving benefits pursuant to section 65B.44, subd. 6. Therefore, under Perry's reading of section 65B.44, subd. 6, she would be entitled to benefits until her death or until she receives the maximum amount of survivors' economic loss benefits payable. *See* Minn.Stat. § 65B.44, subd. 1(a) (2006) (setting forth the minimum basic economic loss benefits that insurers must provide). It would be anomalous for the legislature to create a broad class of provable dependents and then fail to delineate a standard by which payments to members of that class terminate.[4] *See* Minn.Stat. § 645.17(1) (2006) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable").

2. Although *Dahle v. Aetna Casualty & Surety Insurance Co.*, 352 N.W.2d 397 (Minn.1984), offers some support for Perry's reading of section 65B.44, subd. 6, the facts of that case are distinguishable from those before us. The issue we resolved in *Dahle* was whether a posthumous child qualifies as a "surviving dependent" under the statute, and we emphasized that posthumous children are afforded protection elsewhere under Minnesota law. *Id.* at 400–01. *Dahle*, which involved a claim brought on behalf of an actual "child" of the decedent, cannot be fairly read as authority for the proposition that others, such as friends, acquaintances, or a girlfriend or boyfriend residing with the decedent, are entitled to benefits. *Dahle* involved children, who are entitled to support from parents as a matter of law and are specifically mentioned in the No–Fault Act.

3. We decline the dissent's invitation to speculate with respect to various hypotheticals, in dicta, as to particular circumstances that are not before us. That said, many of the dissent's hypotheticals involve individuals specifically recognized in the statute and also in *Dahle*.

4. The adoption of Perry's reading of section 65B.44, subd. 6, would thus disfavor a decedent's surviving spouse and children with regard to the termination of benefits. Payments to a decedent's surviving spouse and children would terminate when the recipient ceases to maintain the "status * * * of dependency" (presumably upon the remarriage of a surviving spouse or upon the attainment of majority, marriage, or emancipation of a surviving child), but other individuals would be entitled to payments until death or receipt of the entire amount payable under the No–Fault Act. Such a result would be contrary to the legislature's intention to favor a decedent's surviving spouse and children via the dependency presumption.

Although we conclude that the statutory language at issue is not ambiguous, given our contrary statement in dicta in *Peevy*, it is useful to consider the legislative history and legislative purposes behind the statute. Perry's interpretation lacks merit even if we conclude that ambiguity exists and therefore look to legislative history and legislative purposes to determine the statute's meaning.

### Evolution and Legislative History of Minn.Stat. § 65B.44, subd. 6

We resort to the former law and legislative history to ascertain the legislative intent behind an ambiguous statute. Minn. Stat. § 645.16(5), (7). As originally proposed in the Senate in 1973, the No–Fault Act mandated payment of survivors' economic loss benefits to "survivors," which it defined by reference to Minn.Stat. § 573.02, subd. 1 (1971), as "the surviving spouse and next of kin." 1 Journal of the Senate 1503–04 (68th Minn.Leg., Apr. 25, 1973). But when enacted in 1974, the second paragraph of section 65B.44, subd. 6, identified a decedent's surviving spouse and children as presumed dependents and provided, *"In all other cases,* questions of the existence and extent of dependency shall be determined in accordance with the facts at the time of the death." Act of Apr. 11, 1974, ch. 408, § 4, 1974 Minn. Laws 762, 766–67 (codified at Minn.Stat. § 65B.44, subd. 6 (1974)) (emphasis added).

The legislature deleted the phrase "[i]n all other cases" as part of its amendment of the No–Fault Act in 1975. Act of Mar. 28, 1975, ch. 18, § 5, 1975 Minn. Laws 208, 210. Senator Jack Davies explained to the Senate Committee on Labor and Commerce that the 1975 legislation was necessary because "in preparing legislation for a law with the magnitude, scope and complexities of the No-fault law it is not unusual that drafting errors, omissions, am-

biguities and misleading provisions get into the law." Hearing on S.F. 28, S. Comm. Labor and Commerce, 69th Minn. Leg., Jan. 14, 1975 (minutes). Senator Davies noted that "in some instances the present language is awkward and in others unintended language will be removed from the law, but that the bill does not make any substantive changes in the law." *Id.*

■ As is argued by Auto Owners, the phrase "[i]n all other cases" may have been "unintended language" or one of the "misleading provisions" that the legislature intended to remove from the No–Fault Act. *See id.* The dissent agrees that "[t]he purpose of the change was to eliminate confusing and misleading language," and we believe that the language is confusing and misleading because it did not accurately reflect the intention of the legislature to limit dependency qualification to a decedent's surviving spouse and children. Auto Owners' contention is supported by our presumption that the adoption of an amendment is indicative of legislative intent to effect "some change in the existing law." *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees, Lodge 364 v. State,* 303 Minn. 178, 195, 229 N.W.2d 3, 13 (1975). By eliminating the phrase "[i]n all other cases" from section 65B.44, subd. 6, the legislature likely intended to limit the definition of "dependent" to a decedent's surviving spouse and children.

### Legislative Purposes Behind the No–Fault Act

In ascertaining the legislative intent behind an ambiguous statute, we also consider the mischief to be remedied and the object to be attained. Minn.Stat. § 645.16(3)-(4). The legislatures purposes in adopting the No–Fault Act included, inter alia, "to relieve the severe economic distress of uncompensated victims of auto-

mobile accidents within this state, to speed the administration of justice, and to ease the burden of litigation on the courts of this state." Minn.Stat. § 65B.42 (2006).

Amici curiae OutFront Minnesota and Minnesota Association for Justice suggest that the adoption of Perry's interpretation of section 65B.44, subd. 6, would further the legislative purpose of relieving the economic hardship of uncompensated victims of automobile accidents. But there is no evidence that the legislature actually intended to require insurers to provide survivors' economic loss benefits to individuals other than the decedent's surviving spouse and children. Limiting the definition of "dependent" to a decedent's surviving spouse and children, in contrast, would further the legislative purposes of "speed[ing] the administration of justice" and eas[ing] the burden of litigation on the courts of this state. *See* Minn.Stat. § 65B.42. If we were to adopt Perrys interpretation of section 65B.44, subd. 6, any person financially dependent on an insured decedent could potentially be entitled to survivors economic loss benefits under the No–Fault Act. The flood of litigation that would likely ensue from such a ruling would actually hinder the administration of justice and increase the burden of litigation on Minnesota courts in contravention of the legislature's purposes in enacting the No–Fault Act.[5] *See* Minn.Stat. § 65B.42.

In light of the unambiguous language of Minn.Stat. § 65B.44, subd. 6, the district court did not err in concluding that the definition of "dependent" in section 65B.44, subd. 6, is limited to a decedent's surviving spouse and children. Because Perry is not Daniel Savage's surviving spouse or child, she is not entitled to survivors' economic loss benefits under the No–Fault Act.

Affirmed.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

Today, the court misinterprets the definition of "dependent" under Minnesota's No–Fault Act, Minn.Stat. § 65B.44, subd. 6 (2006). In doing so, the court ignores the language of the statute and the legislative intent behind the statute and its subsequent amendment. Further, the court's interpretation undermines an important purpose of the Act and will lead to absurd results. Therefore, I respectfully dissent.

Minnesota's No–Fault Act states:

Survivors economic loss benefits, in the event of death occurring within one year of the date of the accident, caused by and arising out of injuries received in the accident, are subject to a maximum of $200 per week and shall cover loss accruing after decedent's death of contributions of money or tangible things of economic value, not including services, that surviving dependents would have received from the decedent for their support during their dependency had the decedent not suffered the injury causing death.

For the purposes of definition under section 65B.41 to 65B.71, the following described persons shall be presumed to be dependents of a deceased person: (a) a wife is dependent on a husband with whom she lives at the time of his death; (b) a husband is dependent on a wife with whom he lives at the time of her

---

5. Of course, as we noted, and indeed emphasized, in *Peevy*, the definition of "dependent" is a matter subject to legislative determina-

tion. *See Peevy*, 346 N.W.2d at 123. The legislature has not acted to further define "dependent" since *Peevy* was decided in 1984.

death; (c) any child while under the age of 18 years, or while over that age but physically or mentally incapacitated from earning, is dependent on the parent with whom the child is living or from whom the child is receiving support regularly at the time of the death of such parent. *Questions of the existence and the extent of dependency shall be questions of fact, considering the support regularly received from the deceased.*

Payments shall be made to the dependent, except that benefits to a dependent who is a child or an incapacitated person may be paid to the dependent's surviving parent or guardian. Payments shall be terminated whenever the recipient ceases to maintain a status which if the decedent were alive would be that of dependency.

Minn.Stat. § 65B.44, subd. 6. (emphasis added).

In 1984, we considered for the first time how to interpret section 65B.44, subdivision 6. *See Peevy v. Mut. Servs. Cas. Ins. Co.*, 346 N.W.2d 120 (Minn.1984). *Peevy* involved an ex-wife who relied on her former husband's spousal maintenance for 87% of her monthly income and for her hospital and medical insurance and who sued the former husband's insurance company to recover survivor's economic loss benefits. *Id.* at 121. While noting that subdivision 6 is "not a model of clarity," we concluded that "one possible reading of the statute" supports a former spouse's dependency claim under the Act. *Id.* at 121–22.[1]

We reasoned that, "[i]f dependency were limited to the presumed categories, there would be no need for further inquiry into the *existence* of dependency based on regular receipt of support. Consideration of regularly received support is not relevant to the dependency of those persons entitled to a presumption." *Id.* at 122. While *Peevy* was ultimately decided on the insurance policy's language, I believe the *Peevy* court's reasoning underlying its interpretation of subdivision 6 was sound then and continues to be sound today.[2]

We interpreted section 65B.44, subdivision 6, a second time in *Dahle v. Aetna Casualty & Insurance Co.*, in order to determine whether a posthumous child is a "surviving dependent" who may recover benefits under the no-fault assigned claims plan under Minn.Stat. §§ 65B.63–65B.65 (1982). 352 N.W.2d 397, 400–01 (Minn. 1984). We noted that under section 65B.44, subdivision 6, a child is *"presumed"* to be dependent when receiving support regularly from the deceased parent at the time of the death of the parent. *Id.* at 400. We also focused on that section's language providing that "questions of the *existence* and the extent of dependency" are questions of fact, depending on the support regularly received from the deceased. *Id.* Citing *Peevy*, 346 N.W.2d at 122, we noted that section 65B.44, subdivision 6, "*also* can be read to outline *obvious* situations of dependency."[3] *Id.* (emphasis added). We indicated that a posthumous

---

1. The other possible reading discussed in *Peevy* is that the phrase, "considering the support regularly received from the deceased," could be read "to refer to the issue of the extent of dependency only." 346 N.W.2d at 122.

2. Although the court rejects our assessment of the No–Fault Act in *Peevy* as dicta, the mere fact that it was dicta does not mean the *Peevy* court's reasoning is flawed. Interestingly, the

court makes no effort to explain why that reasoning is unsound.

3. Although the court is right that *Dahle* ultimately held that posthumous children are "entitled to support from parents as a matter of law, and [are] specifically mentioned in the No–Fault Act," the court fails to explain away the statement that there are situations in which dependency is not obvious.

child "cannot be characterized as [involving an] obvious" situation of dependency and that "[d]ependency is a question of fact by definition." *Id.* We then considered the definition of "surviving dependent" in light of the definition of "child or children" found in Minn.Stat. § 645.45, subd. 8 (1982). *Id.* We concluded that "dependency is a question of fact in situations where dependency is not presumed," before holding that a posthumous child is included in the definition of "surviving dependent." *Id.* at 400–01. Interestingly, in the 24 years since *Peevy* and *Dahle,* the legislature has taken no action to overrule the court's interpretation by amending subdivision 6.

The Act provides that surviving dependents of a person killed in a motor vehicle accident are entitled to certain survivors' economic loss benefits. In defining who qualifies as a surviving dependent, the Act's language identifies three classes of people who are presumed to be a dependent of the deceased person: (1) a wife living with her husband at the time of the husband's death; (2) a husband living with his wife at the time of the wife's death; and (3) the decedent's children under the age of 18 or if over 18 and also incapacitated and receiving support from the decedent at the time of the decedent's death. Minn.Stat. § 65B.44, subd. 6. Having identified these three presumed classes of surviving dependents, the statute goes on to state, "Questions of the existence and the extent of dependency shall be questions of fact, considering the support regularly received from the deceased." *Id.* Based on this language, the court holds that only those who the Act presumes to be surviving dependents can qualify to receive survivors' benefits under the Act.

A plain reading of the Act's language strongly suggests, contrary to the court's holding, that there are people other than those in the presumed classes who may qualify as a dependent of a deceased person. The statute provides "the following *described* persons shall be presumed to be dependents of a deceased person," *id.,* which, by implication, indicates that there are individuals who could qualify as dependents but are not described in the presumed classes. The court, however, concludes that in amending subdivision 6 by removing the phrase "in all other cases," the legislature intended to make ineligible for dependency benefits all of those persons who were previously eligible for such benefits except those the statute presumes to be dependents. I believe that conclusion is wrong.

When construing statutory language, we ascertain legislative intent by considering:

(1) the occasion and necessity for the law;

(2) the circumstances under which it was enacted;

(3) the mischief to be remedied;

(4) the object to be attained;

(5) the former law, if any, including other laws upon the same or similar subjects;

(6) the consequences of a particular interpretation;

(7) the contemporaneous legislative history; and

(8) legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16 (2006).

Here, the legislature enacted subdivision 6 in part "to relieve the severe economic distress of uncompensated victims." Minn.Stat. § 65B.42 (2006). Today, the court dismisses this purpose in favor of speeding the administration of justice and easing the burden of litigating claims; however, relieving economic distress was the focus of this court in *Dahle* in extending survivors' benefits to posthumous chil-

dren. 352 N.W.2d at 401. Furthermore, the court's interpretation ignores the fact that the No–Fault Act is designed to be remedial, 352 N.W.2d at 401, and we interpret remedial legislation "broadly to better effectuate its purpose," *Current Tech. Concepts, Inc. v. Irie Enters., Inc.,* 530 N.W.2d 539, 544 (Minn.1995). The court's narrow reading of subdivision 6, if anything, exacerbates the severe economic distress of uncompensated victims.

Consideration of "contemporaneous legislative history" and the former law also inform our understanding of the legislature's intent in enacting section 65B.44, subdivision 6. The court focuses on the fact that a 1975 amendment to the Act deleted the phrase "[i]n all other cases" from the last sentence of the second paragraph of subdivision 6. Before the amendment, the sentence read, "In all other cases, questions of the existence and extent of dependency shall be determined in accordance with the facts at the time of the death." Minn.Stat. § 65B.44, subd. 6 (1974). When the deleted language is included in the sentence, the sentence suggests that, in all cases other than those in which the person is presumed to be a dependent, questions of the existence and extent of dependency are questions of fact and that in cases in which the person is presumed to be a dependent the existence or extent of their dependency is not a question of fact. Indeed, the court, without saying so, essentially concedes that before the last sentence of the second paragraph of subdivision 6 was amended in 1975 by the deletion of the words "in all other cases," persons other than those presumed to be dependents were eligible for benefits under subdivision 6 if they could establish the existence and extent of their dependency. If the legislature had intended such a significant change, however, it certainly knew how to say so explicitly. But it did not. In fact, contemporaneous legislative histo-

ry, as the court notes, suggests that the removal of the words "in all other cases" was not intended to change the meaning. The purpose of the change was to eliminate confusing and misleading language. The amendment of the language included the presumed classes in the category of persons who could have their dependency rebutted.

The court concludes from the deletion that "the legislature likely intended to limit the definition of 'dependent' to a decedent's surviving spouse and children." However, it reaches the opposite conclusion reached in *Peevy,* when we determined that the legislative history of the amendment to subdivision 6 *supports* an interpretation indicating an intent to create an open category of dependents other than those persons presumed to be dependent. 346 N.W.2d at 122. The sponsor of the amendment, Senator Jack Davies, noted that "in some instances the present language is awkward and in others unintended language will be removed from the law, but that *the bill does not make any substantive changes* in the law." Hearing on S.F. 28, S. Comm. Labor and Commerce, 69th Minn. Leg., Jan. 14, 1975 (minutes) (emphasis added). In *Peevy,* we stated that

> [t]he reason for the change, in Senator Davies' words, was that "dependency has to be determined on a continuing basis rather than as of the time of death." There was no discussion of the elimination of the language "[i]n all other cases." The language allowing inquiry into the *existence* of dependency, however, may make the "[i]n all other cases" language unnecessary and could explain its elimination in the redrafting. In light of Senator Davies' statement that the amendment made no substantive changes, the legislative history supports a conclusion that there can be

dependents under the statute other than the presumed dependents.

346 N.W.2d at 122.

Contrary to the court's reading of the statute, it is more logical and a plainer reading of the statute to infer that the legislature effected the change to have courts look at the factual question of dependency in both presumed classes and nonpresumed classes of dependents. If the legislature intended to enact a major substantive change to subdivision 6 by limiting the survivors' benefits to persons in the presumptive classes, the amendment's sponsor would not have had a reason to indicate that the amendment makes no substantive change. Further, the change would have been more explicit, more clear, and less cryptic. The legislature certainly knows how to explicitly limit access to dependency benefits. *See, e.g.,* Minn.Stat. § 176.111, subd. 3 (2006) (specifying "[a] wife, child, husband, mother, father, grandmother, grandfather, grandchild, sister, brother, mother-in-law, father-in-law" as persons who could be considered dependents under the Workers' Compensation Act). In this case, the legislature could simply have modified the first sentence of the second paragraph of subdivision 6 to read, "For purposes of definition under section 65B.41 to 65B.71, *the dependents of a deceased person are limited to* the following persons: (a) a wife * * *." The legislature did not make such a modification. As I read the amendment, the impact of the deletion of the phrase "in all other cases" is to change subdivision 6 to require that in all cases, including presumed cases, questions of the existence and extent of dependency are fact questions. Thus, I would take the amendment's sponsor at his word and conclude that the legislature intended to delete unintended language when it removed the words "in all other cases" from subdivision 6. I do not read the removal of the "in all other cases" language to change the meaning of the remainder of the sentence to read that the sentence now applies only to those presumed to be dependents.

We also consider the consequences of a particular interpretation when construing a statute. Minn.Stat. § 645.16. The court's reading of subdivision 6 produces absurd results, as illustrated by any number of hypothetical, but not unusual, situations that do not meet the parameters of the statute under the court's narrow interpretation. Take, for example, the situation involving a father who is the breadwinner and the mother stays at home caring for the couple's three minor children.[4] After

---

4. Using examples from *Black's Law Dictionary* 1447 (8th ed.2004), the court suggests one must have a legal "status" that is terminable, such as "status of a father" and "status of a wife," to be a dependent under the No-Fault Act. *Black's* definition is not nearly so narrow, however. *Black's Law Dictionary* defines "status" as follows:

  1. A person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities, and other legal relations, or any particular group of them separately considered <the status of a landowner>. 2. A person's legal condition regarding personal rights but excluding proprietary relations <the status of a father> <the status of a wife>. 3. A person's capacities and incapacities, as opposed to other elements of personal status <the status of minors>. 4. A person's legal condition insofar as it is imposed by the law without the person's consent, as opposed to a condition that the person has acquired by agreement <the status of a slave>.

*Black's Law Dictionary* 1447 (8th ed.2004). Moreover, *Black's Law Dictionary* does not provide the exclusive definition for the word "status." For example, the *Random House Dictionary of the English Language* 1862 (2d ed.1987) defines "status" as "1. the position of an individual in relation to another or others * * * 3. *Law.* the standing of a person before the law." The court's reasoning that a live-in girlfriend does not have to maintain her "status" and will receive benefits until she

five years of living together, the couple decides to get married. The wedding day comes, they get married, and the father is killed in a motor vehicle accident the next day. Under the court's reading of subdivision 6, the mother would be eligible for survivors' benefits because she is presumed to be a dependent of the deceased husband and father. If, however, the father is killed on the way to the wedding ceremony, the mother would not be eligible for survivors' benefits because she is not a presumed dependent and is not eligible to establish the existence or extent of her dependency even though, but for the timing of the father's death, she is, for all practical purposes, in the same position she would otherwise have been in if the father's death occurred the day after the wedding. If the couple married and lived together for five more years and separated but did not divorce and the husband is killed in a motor vehicle accident after the separation, the wife would no longer be presumed to be a dependent (because she was not living with the husband at the time of death) and therefore, under the court's interpretation of subdivision 6, would not qualify for dependency benefits, even if she had been receiving court-ordered maintenance. The children's eligibility for the benefits would be uncertain depending on whether the husband was providing regular support at the time of his death. In the case of a husband and wife who live apart due to the wife's military service, if the wife were to die as a result of an automobile accident, the husband would be ineligible for survivors' benefits under the court's holding. Yet anoth-

er absurd result would occur when a child takes an elderly parent or an incapacitated sibling into her home in order to care and provide for the parent or sibling. If the child dies as a result of an automobile accident, the parent or sibling would not be able to recover benefits as a dependent. Perhaps most absurd, under the court's reading of the statute, is the example of the couple, married for 60 years, in their 90s, and the husband, no longer able to live in their home, lives in an assisted living facility. If the wife dies as a result of a motor vehicle accident, the husband, even though he would be a surviving spouse at the time of the wife's death, would not be eligible for survivors' benefits because he could not establish dependency under the court's holding. Such disparate results are not only absurd, they serve to highlight the fact that the legislative goal of relieving the severe economic distress of uncompensated victims is not met. Thus, I conclude that the legislature could not have intended the narrow interpretation ascribed to subdivision 6 by the court.

Finally, I would note that courts and commentators, until now, have tended to interpret Minn.Stat. § 65B.44, subd. 6, as extending eligibility for dependency benefits to persons beyond those in the presumed categories. In *Peevy*, we discussed the statutory language and legislative history as supporting an interpretation that the category of dependents is open beyond the presumed classes. 346 N.W.2d at 121–22. In *Dahle*, we concluded that "dependency is a question of fact in situations

dies or meets the maximum amount of survivors' benefits payable fails to recognize that her status as a dependent, just like a surviving wife's, will end when she marries. Unlike a wife who was living with the decedent at the time of his death and who is dependent without regard to the extent of the dependency, the girlfriend's dependency may even end ear-

lier than death, remarriage, or receipt of the statutory maximum benefit, as her "status" would be a fact question that could end if she became dependent on another person or if she became self-dependent, for example as a result of winning the lottery or receiving an inheritance.

where dependency is not presumed." 352 N.W.2d at 400. In *School Sisters of Notre Dame v. State Farm Mutual Automobile Insurance Co.*, 476 N.W.2d 523, 525 (Minn. App.1991), the court of appeals stated that, "[i]n addition to persons presumed to be dependents, the statute indicates an intent to create a category of persons whose dependent status is a question of fact." Professor Michael Steenson notes that there seems to be no specific limitation in the statute to relatives. Michael K. Steenson, *Minnesota No–Fault Automobile Insurance* § 8.06[2] (3d ed.2007). Combined with the legislature's failure to take any action to change any of these interpretations, the court's contrary reading of the statute is misguided.

For all of the above reasons, I conclude that the category of persons who are eligible to receive survivors' benefits as dependents of a deceased person who dies as a result of injuries received in a motor vehicle accident is not limited to those persons presumed to be dependents under Minn. Stat. § 65B.44, subd. 6. As the court of appeals said in *School Sisters of Notre Dame*, "the statute indicates an intent to create a category of persons whose dependent status is a question of fact."

Therefore, I respectfully dissent.

MEYER, Justice (dissenting).

I join in the dissent of Justice Page.